STATE of Wisconsin, Plaintiff-Respondent,

v.

Curtis E. GALLION, Defendant-Appellant-
Petitioner.

Supreme Court

*No. 01–0051–CR. Oral argument September 17, 2003.—Decided
April 15, 2004.*

2004 WI 42

(Also reported in 678 N.W.2d 197.)

536

For the defendant-appellant-petitioner there were briefs and oral argument by *Randall E. Paulson,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *Eileen W. Pray,* assistant attorney general, with whom on the briefs was *Peggy A. Lautenschlager,* attorney general.

An amicus curiae brief was filed by *Robert R. Henak* and *Henak Law Office, S.C.,* Milwaukee, on behalf of Counsel for Wisconsin Association of Criminal Defense Lawyers.

An amicus curiae brief was filed by *Walter J. Dickey, David E. Schultz,* and *Michael E. Smith,* University of Wisconsin Law School, and oral argument by *Walter J. Dickey.*

¶ 1. ANN WALSH BRADLEY, J.

> In all Anglo-American jurisprudence a principal obligation of the judge is to explain the reasons for his actions. His decisions will not be understood by the people and cannot be reviewed by the appellate courts unless the reasons for decisions can be examined. It is thus apparent that requisite to a prima facie valid sentence is a statement by the trial judge detailing his reasons for selecting the particular sentence imposed.

*McCleary v. State,* 49 Wis. 2d 263, 280–81, 182 N.W.2d 512 (1971).

¶ 2. Those words are as true today as they were when they first appeared in *McCleary.* Yet, sentencing courts have strayed from the directive. Instead, for some, merely uttering the facts, invoking sentencing factors, and pronouncing a sentence is deemed sufficient. Such an approach confuses the exercise of discretion with decision-making.

¶ 3. As the *McCleary* court instructed, evidence of the exercise of discretion must be set forth on the

record: "there must be evidence that discretion was in fact exercised. Discretion is not synonymous with decision-making. Rather, the term contemplates a process of reasoning." *Id.* at 277.

¶ 4. Now, in the wake of truth-in-sentencing legislation, we reinvigorate the *McCleary* directive that the exercise of sentencing discretion must be set forth on the record. Although we do not change the appellate standard of review, appellate courts are required to more closely scrutinize the record to ensure that "discretion was in fact exercised and the basis of that exercise of discretion [is] set forth." *Id.*

¶ 5. The legislature well recognized that explaining the reasons for the particular sentence should not be optional for the circuit court under truth-in-sentencing. It codified the requirement adopted in *McCleary* by enacting Wis. Stat. § 973.017(10m) (2001–02): "Statement of reasons for sentencing decision. (a) The court shall state the reasons for its sentencing decision and . . . shall do so in open court and on the record."[1]

¶ 6. In this opinion, we examine the process of reasoning which demonstrates the proper exercise of

<hr>

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

Wisconsin Stat. § 973.017(10m) reads in full:

STATEMENT OF REASONS FOR SENTENCING DECISION (a) The court shall state the reasons for its sentencing decision and, except as provided in par. (b), shall do so in court and on the record.

(b) If the court determines that it is not in the interest of the defendant for it to state reasons for its sentencing decision in the defendant's presence, the court shall state reasons for its sentencing decision in writing and include the written statement in the record.

sentencing discretion. Having emphasized that our precedent and the legislature both mandate that the exercise of sentencing discretion be set forth on the record, we turn to the facts of this case.

¶ 7. Curtis Gallion seeks review of a published court of appeals' decision that affirmed a judgment convicting him of homicide by intoxicated use of a motor vehicle.[2] He asserts that the circuit court erroneously exercised its discretion in failing to provide an adequate explanation for the sentence given, citing *McCleary*. Essentially, Gallion advances that the basic prerequisites for the sound exercise of discretion must be reexamined in light of the changes brought by truth-in-sentencing legislation.[3] In addition, he contends that the circuit court erred in placing undue

This statute codifies what was recognized in *McCleary*. There, this court expressly adopted Standard 2.3(c) of the ABA Standards Relating to Appellate Review of Sentences, which provides:

> The sentencing judge should be required in every case to state his reasons for selecting the particular sentence imposed. Normally, this should be done for the record in the presence of the defendant at the time of sentence. In cases in which the sentencing judge deems it in the interest of the defendant not to state fully the reasons for the sentence in the presence of the defendant, he should prepare such a statement for transmission to the reviewing court as a part of the record.

*McCleary v. State,* 49 Wis. 2d 263, 281–82, 182 N.W.2d 512 (1971).

[2] *State v. Gallion,* 2002 WI App 265, 258 Wis. 2d 473, 654 N.W.2d 446 (affirming a decision of the circuit court for Milwaukee County, John J. DiMotto, Judge).

[3] Wisconsin adopted truth-in-sentencing legislation in two phases. The first phase, TIS-I, was enacted in June 1998 and applied to offenses committed on or after December 31, 1999.

emphasis on the character of the victim and imposing a sentence that is harsh and excessive.

¶ 8. We agree that truth-in-sentencing provides an impetus for this court to reexamine the basic requirements for the sound exercise of discretion. Accordingly, we reaffirm the sentencing standards established in *McCleary* and determine that the application of those standards, demonstrating the exercise of discretion, must be set forth on the record for future cases.[4]

¶ 9. Further, we determine that the circuit court provided an adequate explanation for the sentence given, used relevant information regarding the character of the victim, and imposed a sentence that was neither unduly harsh nor excessive. In essence, we conclude that the circuit court did not erroneously exercise its discretion. Therefore, we affirm the court of appeals.

I

¶ 10. On March 3, 2000, at about 1:30 a.m., Gallion was drunk and driving his car at a high rate of speed in Milwaukee. He ran a red light and collided

---

*See* 1997 Wis. Act 283. The second phase, TIS-II, was enacted in July 2002 and became effective February 1, 2003. *See* 2001 Wis. Act 109.

[4] The legislature has defined the cases subject to truth-in-sentencing. Wis. Stat. § 973.017(1) provides:

> (1) DEFINITION. In this section, "sentencing decision" means a decision as to whether to impose a bifurcated sentence under s. 973.01 or place a person on probation and a decision as to the length of a bifurcated sentence, including the length of each component of the bifurcated sentence, the amount of a fine, and the length of a term of probation.

This opinion is directed to those cases that come within this statutory definition.

with another vehicle, crashing into its side. Vanessa Brown, a passenger in the other car, was killed by the collision. A blood test, taken within three hours of the accident, revealed Gallion's blood alcohol content to be .237, nearly two-and-a-half times the legal limit.

¶ 11. Two months later, Gallion entered a plea of guilty to homicide by intoxicated use of a motor vehicle.[5] Pursuant to this plea, the State agreed to recommend prison, but leave the length of confinement for the circuit court to determine. A presentence investigation was ordered, and the presentence writer recommended a sentence of 13 to 16 years in prison followed by 5 to 7 years of extended supervision.

¶ 12. At sentencing, the circuit court heard testimony from Brown's mother, father, teacher, and employer. The court also received several letters from her relatives and associates. Both the witnesses and writers addressed Brown's admirable qualities along with the impact her death had on their lives.

¶ 13. In a lengthy explanation, covering 20 pages of transcript, the circuit court referenced relevant facts and discussed sentencing factors. The court addressed: (1) the gravity of the offense, (2) the character and rehabilitative needs of Gallion, and (3) the need to protect the community. It then sentenced Gallion to 21 years of confinement followed by 9 years of extended supervision. The maximum penalty for the offense was 40 years of confinement, followed by 20 years of extended supervision.

¶ 14. Gallion subsequently moved to modify his sentence, alleging an erroneous exercise of discretion. He asserted that the circuit court's sentence was arbitrary in that it failed to explain the length it imposed.

[5] Wisconsin Stat. § 940.09(1)(b) (1997–98).

Gallion further argued that the court accorded too much weight to Brown's character and had increased the sentence because his character compared unfavorably to hers.

¶ 15. The circuit court denied Gallion's motion. In doing so, it concluded that its sentencing remarks provided ample basis for its exercise of discretion. The court also explained that it was "obliged to consider all aspects of the defendant's crime, including the character of the victim and the impact of the defendant's crime on the people who were close to her, as relevant to the gravity of the offense." The court then concluded that it was "allowed by law to sentence the defendant to a maximum of 60 years for this offense and was only required to consider the relevant sentencing factors in determining an appropriate sentence within the exercise of its discretion."

¶ 16. The court of appeals agreed with the circuit court's decision. It rejected Gallion's argument that more specificity was required of the circuit court at sentencing. *State v. Gallion*, 2002 WI App 265, ¶ 9, 258 Wis. 2d 473, 654 N.W.2d 446. The court further determined that "the sentencing court considered Vanessa Brown's character in the context of assessing crime severity and did not punish Gallion simply because Brown was an extraordinary person." *Id.*, ¶ 20. It noted that Gallion "[had] not met his burden of showing that the court imposed a more harsh sentence *because* of that contrast [of character]." *Id.*, ¶ 24 (emphasis in original). Upon reviewing the circumstances surrounding the sentence, the court concluded that the sentence imposed was not "so excessive and unusual and so disproportionate to the offense committed as to shock public sentiment . . . ." *Id.*, ¶ 41 (citations omitted).

548

¶ 17. It is a well-settled principle of law that a circuit court exercises discretion at sentencing. *Mc-Cleary,* 49 Wis. 2d at 277. On appeal, review is limited to determining if discretion was erroneously exercised. *See id.* at 278. When discretion is exercised on the basis of clearly irrelevant or improper factors, there is an erroneous exercise of discretion. *Id.*

¶ 18. On review, "[i]n any instance where the exercise of discretion has been demonstrated, [the appellate court] follows a consistent and strong policy against interference with the discretion of the trial court in passing sentence." *Id.* at 281. *See also In re Felony Sentencing Guidelines,* 120 Wis. 2d 198, 203, 353 N.W.2d 793 (1984). "[S]entencing decisions of the circuit court are generally afforded a strong presumption of reasonability because the circuit court is best suited to consider the relevant factors and demeanor of the convicted defendant." *State v. Borrell,* 167 Wis. 2d 749, 781, 482 N.W.2d 883 (1992) (citing *State v. Harris,* 119 Wis. 2d 612, 622, 350 N.W.2d 633 (1984)). "Appellate judges should not substitute their preference for a sentence merely because, had they been in the trial judge's position, they would have meted out a different sentence." *McCleary,* 49 Wis. 2d at 281.[6]

¶ 19. The *McCleary* court summarized the reasoning process necessary to facilitate appellate review:

[T]he term [discretion] contemplates a process of reasoning. This process must depend on facts that are of record or that are reasonably derived by inference from

---

[6] In this case, we neither decide nor address the application of the independent appellate review doctrine.

the record and a conclusion based on a logical rationale founded upon proper legal standards.

*Id.* at 277.

### III

¶ 20. As indicated, the seminal case for sentencing in Wisconsin is *State v. McCleary,* 49 Wis. 2d 263. *McCleary* outlined the purposes to be served by sentencing along with the scope and extent of the circuit court's discretion. In it, this court criticized a circuit court for imposing a sentence close to the maximum without adequate explanation.

¶ 21. McCleary was a young man, a first-time offender, who was convicted of forging and uttering a $50 check. *Id.* at 266–67. For this offense, he was sentenced to an indeterminate term of nine years, one year less than the maximum available by statute. *Id.* at 270. Although the circuit court stated its reasons for rejecting probation, it failed to give any explanation for the sentence imposed. *Id.* Because this court was unable to find facts in the record to support the circuit court's decision, it concluded that McCleary's sentence constituted an erroneous exercise of discretion. *See id.* at 273. The court, therefore, reduced McCleary's sentence to an indeterminate term of not more than five years. *Id.* at 290.

¶ 22. The *McCleary* court concluded that the discretion of the sentencing judge "must be exercised on a rational and explainable basis." *Id.* at 276. It determined that in order to have a valid sentence there must be "a statement by the trial judge detailing his reasons for selecting the particular sentence imposed." *Id.* at 281.

¶ 23. *McCleary* further recognized that "[t]he sentence imposed in each case should call for the minimum

amount of custody or confinement which is consistent with the protection of the public, the gravity of the offense and the rehabilitative needs of the defendant." *Id.* at 276. This principle has been reiterated in subsequent cases. *E.g., State v. Setagord,* 211 Wis. 2d 397, 416, 565 N.W.2d 506 (1997); *Borrell,* 167 Wis. 2d at 764; *State v. Krueger,* 119 Wis. 2d 327, 336–37, 351 N.W.2d 738 (1984).

¶ 24. Thus, these requirements of "detailing the reasons for selecting the particular sentence imposed" and a sentence calling for the "minimum amount of custody or confinement" are not new under Wisconsin law. Indeed, both the Criminal Jury Instructions Committee and the Criminal Bench Book Committee acknowledge as much. *See* Wis. J.I.—Crim. SM-34 at 8–9 (1999) ("The justification for the length of the sentence should always be set forth in the record, as well as the reasons for not imposing a sentence of lesser duration."); Wisconsin Judicial Benchbook, CR 36–18 (2002) ("Judge must detail reasons for selecting particular sentence imposed").

¶ 25. Likewise, not new to our sentencing jurisprudence is the concept that probation should be considered as the first alternative. In *Bastian v. State,* 54 Wis. 2d 240, 248–49, n.1, 194 N.W.2d 687 (1972), this court expressly adopted Standard 1.3 of the ABA Standards Relating to Probation. That standard provides in part that, "Probation should be the sentence unless the sentencing court finds that:

> (i) confinement is necessary to protect the public from further criminal activity by the offender; or
>
> (ii) the offender is in need of correctional treatment which can most effectively be provided if he is confined; or

(iii) it would unduly depreciate the seriousness of the offense if a sentence of probation were imposed."

This requirement is consistent with the *McCleary* standard calling for the minimum amount of custody or confinement.

¶ 26. We believe that *McCleary* was and still is one of the best statements addressing how a circuit court should exercise its discretion. As we noted, there has been a regrettable disconnect, however, between its principles as-stated and its principles as-applied. This disconnect has resulted in a more mechanical form of sentencing: as long as the sentencing transcript reflects that the circuit court enunciates the primary sentencing factors and discusses the facts, followed by the imposition of an ultimate sentence, it has properly exercised its discretion.[7]

¶ 27. Apparently concerned with this approach, the court of appeals recently asked this court to "clarify the showing necessary to overcome the presumption that a trial court has properly exercised its sentencing discretion." Certification by Court of Appeals of Wisconsin, *State v. Crouthers,* 99–1307–CR, filed March 30, 2000, p. 1. The court explained:

> [T]he collective memory of the panel members assigned to this appeal could not produce any ready examples of cases since [*McCleary*] in which an appellate court overturned a sentence determination, absent the use of an improper factor or other illegality. . . .

[7] *See, e.g., State v. Wagner,* 191 Wis. 2d 322, 332–33, 528 N.W.2d 85 (Ct. App. 1995). *See also State v. Curbello-Rodriguez,* 119 Wis. 2d 414, 439, 351 N.W.2d 758 (Ct. App. 1984) (Bablitch, J., concurring) ("So long as the trial court discusses each such factor, this court is a rubber stamp for any sentence which may be imposed.")

552

> There appears to be some truth to the appellant's contention that a trial court that articulates the magic words "seriousness of the offense," "character of the offender" and "need to protect the public" will avoid any meaningful review of the sentence it imposes.

*Id.* at 2. In remarks prescient to this case, the court further noted: "[c]hallenges to sentencing discretion are likely to increase under truth-in-sentencing legislation." *Id.*

¶ 28. With the advent of truth-in-sentencing, we recognize a greater need to articulate on the record the reasons for the particular sentence imposed. Under the old, indeterminate system, sentencing discretion was shared among all three branches of government. The legislature set the maximum penalty and the manner of its enforcement; the courts imposed an indeterminate term; and the executive branch, through the parole board, determined how much of that term was going to be served. *See Borrell,* 167 Wis. 2d at 767 (citation omitted). Under truth-in-sentencing legislation, the executive role has been diminished with the elimination of parole. The legislative role is limited to setting the parameters of the penalty. As a result, the judiciary's responsibility for ensuring a fair and just sentence has significantly increased.

¶ 29. The Criminal Penalties Study Committee, an 18-person committee charged with making recommendations and drafting proposed truth-in-sentencing legislation, noted that the judiciary must respond to our evolving system of sentencing:

> This shift of more complete—and informationally accurate—sentencing decisionmaking to the judiciary places upon judges the task to more carefully fashion a sentence based upon the severity of the crime, the character of the offender, the interests of the commu-

553

nity, and the need to protect the public. Judges are on the front lines of the criminal justice system every day, listening to victims and their families, defendants and their families, law enforcement, prosecutors, defense attorneys, and the public.

State of Wisconsin Criminal Penalties Study Committee, Final Report, August 31, 1999, at i.[8]

¶ 30. We share some of the concerns voiced by the court of appeals in the *Crouthers* certification. In light of truth-in-sentencing, a clarification of the requisite standards of sentencing is necessary to ensure that the sentencing court demonstrates compliance with *McCleary* and to assist in appellate review.

¶ 31. Likewise, we agree with the Criminal Penalties Study Committee that the judiciary must address the increased responsibility placed upon the sentencing court in light of truth-in-sentencing. As the Committee observed, truth-in-sentencing legislation caused a "shift of more complete—and informationally accurate—sentencing decisionmaking to the judiciary." The center of gravity for determining when an inmate should be released from prison changed from the parole board's determination, positioned much later in the process, to the judiciary's sentencing determination at the outset.

¶ 32. Previously the sentencing court had only modest control over the length of time actually spent in prison. Judges were thought to possess inadequate information to address the future progress of the inmate. Instead, only prison officials with sustained contacts with the inmate were thought to be in a position to determine if the rehabilitative efforts had been successful. Likewise, if the inmate was determined to be

---

[8] This report can be accessed at http://www.doa.state.wi.us/docs_view2.asp?docid=42.

incorrigible over the years, it was thought that the on-the-scene prison officials advising the parole board were better positioned to assess the inmate's dangerousness and commensurate need for additional prison time.

¶ 33.　Parole boards, in essence, served as a check on sentencing courts' exercise of discretion. Under truth-in-sentencing legislation, parole is abolished and that check is removed.

¶ 34.　Now judges have an enhanced need for more complete information upfront, at the time of sentencing. Judges would be assisted in knowing about a defendant's propensity for causing harm, the circumstances likely to precipitate the harm (e.g., alcoholic beverages, proximity to school children, etc.), and the connection between the elements of the sentence recommended and the objectives of sentencing. To this end, we encourage judges to request more complete presentence reports.

¶ 35.　Information compiled by a sentencing commission will also be helpful in providing comparative data as to the length of sentence for the same crimes and similarly situated defendants. The rule of law is advanced by providing advisory guidelines that channel outcomes in the majority of cases and serve as a touchstone for explaining the reasons for the particular sentence imposed.

¶ 36.　Experience has taught us to be cautious when reaching high consequence conclusions about human nature that seem to be intuitively correct at the moment. Better instead is a conclusion that is based on more complete and accurate information and reached by an organized framework for the exercise of discretion.

¶ 37. *McCleary* and its progeny established standards to assist and assess the exercise of sentencing discretion. Until now, adherence to these standards has been implied as long as the "magic words" were stated, some facts were detailed, and the sentence imposed was within the statutory limits. *McCleary,* however, requires more.

¶ 38. In light of the increased responsibility placed upon the sentencing court, we reaffirm *McCleary*'s sentencing standards and reexamine the manner in which they are to be applied. What has previously been satisfied with implied rationale must now be set forth on the record. *McCleary* certainly contemplates this when it states, "decisions will not be understood by the people and cannot be reviewed by the appellate courts unless the reasons for decisions can be examined." 49 Wis. 2d at 281.

¶ 39. As *McCleary* observed, judges are to explain the reasons for the particular sentence they impose. *Id.* at 280–81. How much explanation is necessary, of course, will vary from case to case. Judges, however, are required to provide a "rational and explainable basis" for the sentence. *Id.* at 276.

¶ 40. A basic framework for this process of reasoning that demonstrates the exercise of sentencing discretion has previously been set forth for sentencing courts. *See* Wis. J.I.—Crim. SM-34 at 8–9 (1999).[9] Circuit courts are required to specify the objectives of the sentence on the record. These objectives include,

___

[9] The oral pronouncement of sentence should include the following:

. . . .

but are not limited to, the protection of the community, punishment of the defendant, rehabilitation of the defendant, and deterrence to others. *Id.*[10]

¶ 41. Courts are to identify the general objectives of greatest importance. These may vary from case to case. In some cases, punishment and protection of the community may be the dominant objectives. In others, rehabilitation of the defendant and victim restitution

5. Explain the general objectives that a criminal sentence may address:

protection of the community

punishment

rehabilitation of the defendant

deterrence of others

6. Identify the general objectives of greatest importance in this case.

7. Identify the factors that were considered in arriving at the sentence and indicate how they influenced the decision.

8. If probation is rejected, indicate why.

. . . .

Wis. J.I.—Crim. SM-34 at 9 (1999).

[10] Likewise, under truth-in-sentencing, the legislature has mandated that when a court makes a sentencing decision that the court shall consider the protection of the public, the gravity of the offense, the rehabilitative needs of the defendant, and any applicable mitigating or aggravating factors, including the aggravating factors specified in subs. (3) to (8). Wis. Stat. §§ 973.01(2)(ad), (ag), (ak), and (b)

may be of greater import. Still others may have deterrence or a restorative justice approach as a primary objective.

¶ 42. Courts are to describe the facts relevant to these objectives. Courts must explain, in light of the facts of the case, why the particular component parts of the sentence imposed advance the specified objectives.

¶ 43. Courts must also identify the factors that were considered in arriving at the sentence and indicate how those factors fit the objectives and influence the decision. In *Harris*, we detailed factors that courts may take into account in the exercise of discretion.[11] These factors assist courts in identifying relevant consider-

[11] These factors include: "(1) Past record of criminal offenses; (2) history of undesirable behavior pattern; (3) the defendant's personality, character and social traits; (4) result of presentence investigation; (5) vicious or aggravated nature of the crime; (6) degree of the defendant's culpability; (7) defendant's demeanor at trial; (8) defendant's age, educational background and employment record; (9) defendant's remorse, repentance and cooperativeness; (10) defendant's need for close rehabilitative control; (11) the rights of the public; and (12) the length of pretrial detention." *Harris v. State,* 75 Wis. 2d 513, 519–20, 250 N.W.2d 7 (1977). Additional factors have been recognized as appropriate considerations (e.g., read-ins, *Austin v. State,* 49 Wis. 2d 727, 183 N.W.2d 56 (1971), and the effect of the crime on the victim, *State v. Jones,* 151 Wis. 2d 488, 444 N.W.2d 760 (Ct. App. 1989)). The circuit court need discuss only the relevant factors in each case. *See State v. Echols,* 175 Wis. 2d 653, 683, 499 N.W.2d 631 (1993).

ations at sentencing. In addition, the legislature has mandated consideration of applicable mitigating or aggravating factors.[12]

---

[12] These factors are applicable for felonies committed on or after February 1, 2003. *See* Wis. Stat. § 973.017(2). Wis. Stat. § 973.017(3) provides:

> (3) AGGRAVATING FACTORS: GENERALLY. When making a sentencing decision for any crime, the court shall consider all of the following as aggravating factors:
>
> (a) The fact that the person committed the crime while his or her usual appearance was concealed, disguised, or altered, with the intent to make it less likely that he or she would be identified with the crime.
>
> (b) The fact that the person committed the crime using information that was disclosed to him or her under s. 301.46.
>
> (c) The fact that the person committed the crime for the benefit of, at the direction of, or in association with any criminal gang, as defined in s. 939.22(9), with the specific intent to promote, further, or assist in any criminal conduct by criminal gang members, as defined in s. 939.22(9g).
>
> (d) The fact that the person committed the felony while wearing a vest or other garment designed, redesigned, or adapted to prevent bullets from penetrating the garment.
>
> (e) 1. Subject to subd. 2., the fact that the person committed the felony with the intent to influence the policy of a governmental unit or to punish a governmental unit for a prior policy decision, if any of the following circumstances also applies to the felony committed by the person:
>
> . . . .

Additionally, the legislature has set forth aggravating factors for specific crimes. These include (1) Serious Sex Crimes Committed While Infected With Certain Diseases, (2) Violent Felony Committed Against Elder Person, (3) Child Sexual Assault or Child Abuse By Certain Persons, (4) Homicide or Injury By Intoxicated Use of a Vehicle, and (5) Controlled

¶ 44. In each case, the sentence imposed shall "call for the minimum amount of custody or confinement which is consistent with the protection of the public, the gravity of the offense and the rehabilitative needs of the defendant." *McCleary,* 49 Wis. 2d at 276. *See also Setagord,* 211 Wis. 2d at 416; *Borrell,* 167 Wis. 2d at 764; *Krueger,* 119 Wis. 2d at 336–37. Accordingly, the circuit courts should consider probation as the first alternative. Probation should be the disposition unless: confinement is necessary to protect the public, the offender needs correctional treatment available only in confinement, or it would unduly depreciate the seriousness of the offense. *Bastian,* 54 Wis. 2d at 248–49, n.1.

¶ 45. If a circuit court imposes probation, it shall explain why the conditions of probation should be expected to advance the objectives it has specified. Likewise, if a circuit court imposes jail or prison, it shall explain why the duration of incarceration should be expected to advance the objectives it has specified. Finally, if a circuit court imposes a bifurcated sentence for a crime committed after December 31, 1999, it shall explain why its duration and terms of extended supervision should be expected to advance the objectives.

¶ 46. In short, we require that the court, by reference to the relevant facts and factors, explain how the sentence's component parts promote the sentencing objectives. By stating this linkage on the record, courts will produce sentences that can be more easily reviewed for a proper exercise of discretion.

Substances Offenses. *See* Wis. Stat. §§ 973.017 (4), (5), (6), (7), and (8).

██

¶ 47. Because we recognize the difficulty in providing a reasoned explanation in isolation, we encourage circuit courts to refer to information provided by others. Courts may use counsels' recommendations for the nature and duration of the sentence and the recommendations of the presentence report as touchstones in their reasoning. Courts may also consider information about the distribution of sentences in cases similar to the case before it. We note that Wis. Stat. § 973.017(2)(a) requires sentencing courts to consider any applicable temporary sentencing guidelines adopted by the Criminal Penalties Study Committee and to consider in the future any applicable guidelines adopted by a sentencing commission.[13]

██

¶ 48. Although we anticipate less disparity with the advent of sentencing guidelines, that does not mean there is less of a need for the exercise of discretion. Individualized sentencing, after all, has long been a cornerstone to Wisconsin's criminal justice jurisprudence. "[N]o two convicted felons stand before the sentencing court on identical footing. . . . and no two cases will present identical factors." *State v. Lechner,* 217 Wis. 2d 392, 427, 576 N.W.2d 912 (1998). Sentenc-

---

[13] For crimes committed on and after February 1, 2003, circuit courts are required to use sentencing guidelines where applicable. Wis. Stat. § 973.017(2)(a). Until the new sentencing commission develops these guidelines, courts shall apply the temporary advisory guidelines drafted by the Criminal Penalties Study Committee. While the circuit courts must consider the guidelines, they are not intended to replace the court's exercise of discretion. The defendant does not have a right to appeal a sentencing decision on the basis that the court departed in any way from the guideline. Wis. Stat. § 973.017(10).

ing guidelines will provide helpful information and serve as a touchstone for explaining the reasons for the particular sentence imposed.

¶ 49. We are mindful that the exercise of discretion does not lend itself to mathematical precision. The exercise of discretion, by its very nature, is not amenable to such a task. As a result, we do not expect circuit courts to explain, for instance, the difference between sentences of 15 and 17 years. We do expect, however, an explanation for the general range of the sentence imposed. This explanation is not intended to be a semantic trap for circuit courts. It is also not intended to be a call for more "magic words." Rather, the requirement of an on-the-record explanation will serve to fulfill the *McCleary* mandate that discretion of a sentencing judge be exercised on a "rational and explainable basis." 49 Wis. at 276. This will assist appellate courts in determining whether the circuit court properly exercised its discretion.[14]

¶ 50. In sum, Wisconsin's common law of sentencing has failed to produce the guidance that *McCleary* envisioned, not because *McCleary* was wrong, but be-

---

[14] Explaining the benefits of appellate review, the *McCleary* court noted:

> In addition to the desirability of reviewing sentences to make sure that they are just, commensurate with the degree of guilt and the need for rehabilitation of the defendant, the American Bar Association Standards point out that sentence review will facilitate the rehabilitation of the offender by affording him an opportunity to assert a reasonable grievance he may have regarding his sentence. A byproduct of a reasonable review of sentencing by an appellate court may well be the diminution of the appellate court's workload by reducing appeals on the merits.

49 Wis. 2d at 278.

cause the application of *McCleary* has been eroded. Allowing implied reasoning rather than requiring an on-the-record explanation for the particular sentence imposed lies at the heart of this erosion.

¶ 51. The rule of law suffers when the sentencing judge's discretion is unguided and unchecked. The rationale for sentencing decisions must be made knowable and subject to review. We determine that with the advent of truth-in-sentencing, the standards established by *McCleary* and its progeny must be reaffirmed and the application of those standards must be on the record.[15]

## IV

¶ 52. We turn next to Gallion's arguments that the circuit court erroneously exercised its discretion in this case by (1) failing to provide an adequate explanation for the sentence given, (2) placing undue emphasis on the character of the victim, and (3) imposing a sentence that is harsh and excessive.

¶ 53. Gallion's first claim is that the circuit court committed error in not providing an adequate explanation for the sentence imposed. Specifically, he contends that re-sentencing is required in light of the circuit court's failure to describe the comparative weight given

---

[15] The concurrence conveys its apprehension in this case with a litany of unanswered questions. Concurrence, ¶ 93. It then suggests that the answer to these questions lies in acknowledging the validity of a "fully explained, rationally based sentence[ ]." Concurrence, ¶ 94. What the concurrence apparently fails to realize, however, is that our decision today is not meant to undermine such recognition. Rather, it should be viewed as a means of achieving that end in a manner that is consistent with *McCleary* and its progeny.

to the factors it identified, or to explain why the sentence constitutes the minimum amount of necessary confinement. Gallion complains, "almost any number of years in prison could be plugged in [the sentence imposed]." He further asserts that, "the court never stated how much incarceration was needed to accomplish rehabilitation/protection, or how, or why, 21 years of incarceration was needed . . . ."

■■■

¶ 54. In addition, Gallion argues that he has a constitutional right to have the court explain why it imposed 21 years of confinement rather than a shorter period, such as 15 years. He maintains, "Due Process does not allow a court to impose a 20–year sentence, without being able to explain its last five years." Gallion also notes, "[i]mprisonment for even one day has a substantial impact on a man's liberty." *United States ex rel. Miller v. Twomey,* 479 F.2d 701, 715 (7th Cir. 1973) (citing *Argersinger v. Hamlin,* 407 U.S. 25 (1972)).

¶ 55. Neither the prior application of *McCleary* nor due process mandates the specificity that Gallion seeks. As noted above, although the standards of *McCleary* are clear, there has been a regrettable disconnect between its principles as-stated and its principles as-applied.

¶ 56. For his due process argument, Gallion relies solely on *Borrell,* 167 Wis. 2d at 772. The court in *Borrell* set forth "three due process rights at sentencing: (1) to be present at the hearing and to be afforded the right to allocution, (2) to be represented by counsel, and (3) to be sentenced on the basis of true and correct information." *Id.* at 772. It emphasized the need for circuit courts to express the factual basis for the sentence imposed so that defendants may challenge the accuracy of those facts. It stated:

> In Wisconsin, the third [due process] right that requires a judge to sentence only on the basis of true and correct information incorporates the requirement enumerated in *McCleary* that the judge must articulate the basis for the sentence imposed on the facts of the record.

*Id.*

¶ 57. We are not persuaded that this proposition supports Gallion's argument. Although *Borrell* required a circuit court to articulate the basis for the sentence imposed, it did not require that articulation to be done with the specificity that Gallion claims.

■

¶ 58. Accordingly, we examine the circuit court's actions under the law as it has been understood since *McCleary*. That law emphasized the delineation of the primary sentencing factors to the particular facts of the case. *State v. Hall*, 2002 WI App 108, ¶ 17, 255 Wis. 2d 662, 648 N.W.2d 41. Here, the circuit court's explanation, which spans 20 pages of transcript, provides ample evidence of that.

¶ 59. With respect to the gravity of the offense, the circuit court focused on the recklessness of Gallion's behavior and the consequences of his actions. It stated:

> What brings you here today is a vehicular homicide. You drank and drank and drank to excess. You were almost two and a half times the legal limit. You got behind the wheel of a car. You drove it recklessly, irresponsibly, excessively, like your drinking. You went through the intersection of 35th and Locust, struck the car that Vanessa Brown was riding in and extinguished her life.

The court further impressed upon Gallion that his crime would forever affect the victim's friends, co-workers, and family, especially her three-year-old son.

¶ 60. In considering Gallion's character, the circuit court again discussed particularized facts. It stated that Gallion was a young man with limited education and employment history. Additionally, it recognized that he suffered from a severe drug and alcohol dependency. After examining his prior criminal record, however, the court concluded that Gallion did not have a good track record in trying to turn around his life. It seemed especially concerned with the fact that he had not taken advantage of the treatment options offered to him in the past.

¶ 61. Finally, the circuit court took into account the need to protect the public from Gallion and others like him. It determined that the defendant could best accomplish his rehabilitation in an institutional setting. The court also observed that society has an interest in punishing Gallion so that his sentence might serve as a general deterrence against drunk driving.

¶ 62. After considering these factors, the circuit court identified the recommendations of the defense counsel and presentence report writer. It further recognized that it was imposing a truth-in-sentencing disposition. The court then arrived at a sentence it believed was fair and just "given the nature of this specific crime, given who [Gallion is], and the interest of the community as a whole." Upon examining the circuit court's actions under the law as it has been understood since *McCleary,* we are satisfied that the circuit court properly exercised its discretion.

¶ 63. Gallion's next claim on appeal is that the circuit court erred in placing undue emphasis on the character of the victim. His arguments are twofold. First, he contends that the court improperly considered the victim's character in evaluating the gravity of the offense. Second, he maintains that the court improperly increased his sentence because his character compared unfavorably to the character of the victim.

¶ 64. Under Wisconsin law, victims have certain rights at sentencing. Article I, § 9m of the Wisconsin Constitution provides in part that, "[t]his state shall ensure that crime victims have . . . the opportunity to make a statement to the court at disposition . . . ." This right is implemented by two statutes imposing obligations on the court. One obligation is to inquire of the district attorney whether he or she has consulted with the victim and has given notice of the sentencing.[16] The other is to determine whether victims wish to provide

---

[16] Wisconsin Stat. § 972.14(2m) provides:

Before pronouncing sentence, the court shall inquire of the district attorney whether he or she has complied with s. 971.095(2) and with sub. (3)(b), whether any of the victims of a crime considered at sentencing requested notice of the date, time and place of the sentencing hearing and, if so, whether the district attorney provided to the victim notice of the date, time and place of the sentencing hearing.

567

information to the court.[17] The only limitation on the victim's ability to make a statement is that it must be relevant to the sentence.

¶ 65. One type of information that appears to be relevant is that which relates to the impact of the crime on the victim or victim's family. Crime victims have the right "[t]o have the court provided with information pertaining to the economic, physical and psychological effect of the crime upon the victim and have the information considered by the court." Wis. Stat. § 950.04(1v)(pm). "A statement from the victims about how the crime affected their lives is relevant to one of the considerations that a judge must take into account at sentencing—the gravity of the crime." *State v. Voss,* 205 Wis. 2d 586, 595–96, 556 N.W.2d 433 (Ct. App. 1996)

¶ 66. Notwithstanding these rights, Gallion argues that the circuit court and court of appeals erred in concluding that the gravity of the offense depended, in part, on the good character of the victim. He takes issue with the circuit court's determination that his crime was "especially tragic and aggravated because of the kind of person the victim was." He also takes exception to the court of appeals' observation that, "It is precisely because of [Vanessa Brown's] outstanding character that the loss is so great." *Gallion,* 258 Wis. 2d 473, ¶ 17.

---

[17] Wisconsin Stat. § 972.14(3)(a) provides:

Before pronouncing sentence, the court shall determine whether a victim of a crime considered at sentencing wants to make a statement to the court. If a victim wants to make a statement, the court shall allow the victim to make a statement in court or submit a written statement to be read in court. The court may allow any other person to make or submit a statement under this paragraph. Any statement under this paragraph must be relevant to the sentence.

¶ 67. Gallion asserts that the character of the victim is irrelevant to the gravity of a homicide by intoxicated use of a motor vehicle. Moreover, he warns that "[t]here is simply no way to validate [the circuit court's] conclusion without holding open the door to an argument, when a victim of lesser character is killed, that the offense is 'not aggravated' or 'less aggravated.' "

¶ 68. We reject Gallion's assertion that the good character of the victim is irrelevant. The circuit court possesses wide discretion in determining what factors are relevant to its sentencing decision. *State v. Echols,* 175 Wis. 2d 653, 683, 499 N.W.2d 631 (1993). Here, it determined that Brown's good character and the loss her death caused her family, friends, and co-workers, were both relevant and appropriate considerations in assessing the gravity of the offense. This was reflected at sentencing when the court told Gallion, "[y]ou have [inflicted] so much hurt on so many people. You have affected so many lives." Indeed, it is unrealistic to expect judges to listen to friends and family of the victim and to not consider their testimony.

¶ 69. Similarly, we reject Gallion's admonition that acknowledging the positive contributions of one victim will devalue the worth of victims who do not have family or friends to speak for them. We fail to see how one necessitates the other.

¶ 70. In doing so, however, we are mindful of the dangers in measuring a victim's comparative worth. In *State v. Spears,* the dissent addressed this concern:

> The court should . . . not attempt to measure the relative value of the victim's life. While the defendant may benefit when no one appears to mourn the deceased, there is no corresponding right to argue that "since

nobody else cares, why should we" or to otherwise diminish the value of the victim's life.

Even though there might be circumstances in which the court could weigh the positive contributions and worth of the victim in assessing the harm caused by the crime, it does not follow that there is a right to have a court consider that a victim was a terrible burden on society.

*State v. Spears,* 227 Wis. 2d 495, 516, 596 N.W.2d 375 (1999) (Abrahamson, C.J., dissenting).

¶ 71. In his second argument, Gallion contends that the circuit court gave weight to the irrelevant factor that his character compared unfavorably to the character of the victim. For support, he cites a passage in the circuit court's postconviction decision, which he maintains is an admission that the court punished him for this comparison. It states:

Their lives crossed paths, however, on March 3, 2000, when the defendant drank to the point of intoxication more than two times the legal limit and got behind the wheel of a car which he drove recklessly and irresponsibly, and ultimately caused the victim's death. *The court highlighted the contrast between the victim and the defendant not to punish the defendant for being "the exact opposite," but rather to punish him for the choices he made on March 3, 2000, which so needlessly brought their lives together in such a tragic way.*

(emphasis added).

■

¶ 72. Again, we disagree with Gallion. The defendant has the burden of showing that the "sentence was based on clearly irrelevant or improper factors." *See State v. Haskins,* 139 Wis. 2d 257, 268, 407 N.W.2d 309 (Ct. App. 1987); *State v. Wickstrom,* 118 Wis. 2d 339,

354–55, 348 N.W.2d 183 (Ct. App. 1984). Gallion has not met this burden with the passage in question. Indeed, when read in context, it is evident that the court was punishing him not for his contrast in character, but rather for the choices he made that fateful night.

## VI

¶ 73. Gallion's final claim in this case is that the sentence imposed was "harsh and excessive." He bases this on the legislature's subsequent reclassification of his offense. Since Gallion's sentencing, the maximum term of confinement for homicide by intoxicated use of a motor vehicle has been reduced to 15 years. Wis. Stat. § 940.09(1c)(a). This dramatic change in the law, Gallion reasons, requires resentencing.

¶ 74. The problem with Gallion's argument is that the reclassification does not apply to him; rather, it only applies to offenders who commit their crimes on or after February 1, 2003. *See id.* As the State correctly notes, the legislature had an opportunity to make the change retroactive, but chose not to do so. Consequently, the maximum term of confinement for Gallion's offense remains 40 years, and the maximum term of extended supervision remains 20 years. Wis. Stat. § 940.09(1)(b) (1997–98). Given the facts of this case, we cannot say that his sentence is "harsh and excessive" or that it shocks the public sentiment. *State v. Daniels,* 117 Wis. 2d 9, 22, 343 N.W.2d 411 (Ct. App. 1983).

¶ 75. Gallion's argument is further undermined by Wis. Stat. § 973.195, the statutory provision specifically enacted to address sentencing disparity between TIS-I and TIS-II. Under it, an offender serving a bifurcated sentence on a Class C to E felony may

petition the sentencing court to adjust the sentence if the inmate has served 85 percent of the term of confinement in prison. *See* Wis. Stat. § 973.195. Likewise, an offender serving a bifurcated sentence on a Class F to I felony may petition the sentencing court to adjust the sentence if the inmate has served 75 percent of the term of confinement in prison. *See id.* Offenders like Gallion serving bifurcated sentences for Class B felonies, however, may not petition for sentence adjustment under the statute. *See id.* Accordingly, we reject his claim.

## VII

¶ 76. In sum, we reaffirm the standards of *McCleary* and require the application to be stated on the record for future cases. *McCleary* mandates that the discretion of a sentencing judge be exercised on a "rational and explainable basis." 49 Wis. 2d at 276. Although we do not change the appellate standard of review, appellate courts are required to more closely scrutinize the record to ensure that "discretion was in fact exercised and the basis of that exercise of discretion [is] set forth." *Id.* at 277.

¶ 77. Additionally, we determine that the circuit court provided Gallion an adequate explanation for the sentence given, used relevant information regarding the character of the victim, and imposed a sentence that was neither harsh nor excessive. Therefore, we conclude that the circuit court did not erroneously exercise its discretion. Accordingly, we affirm the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 78. JON P. WILCOX, J. (*concurring*). I agree with the majority that our decision in *McCleary v. State,*

49 Wis. 2d 263, 182 N.W.2d 512 (1971), and the sentencing standards articulated therein need to be reaffirmed. Rendering just, individualized sentences is a very difficult process and it encompasses probably the most important part of the circuit courts' duties in this state. Well-defined sentencing standards and sentences that are fully explained lead to less disparities and make the function of reviewing courts easier. However, some sentencing disparity will be a necessary corollary to the modern philosophy of individualized sentencing. As the majority recognizes, sentencing is not amenable to mathematical precision. Majority op., ¶ 49.

¶ 79. While I agree with much of the majority opinion regarding the need for circuit courts to fully explain their sentences, I write separately because I have apprehensions over some of the language the majority employs. I concur in the majority's sentiment that "*McCleary* was and still is one of the best statements addressing how a circuit court should exercise its discretion," majority op., ¶ 26. However, the majority does not merely reaffirm *McCleary;* rather, it supplements selective portions of *McCleary* and in doing so seemingly undercuts other sections, which may lead to imprudent appellate interference with the sentencing discretion of circuit courts.

¶ 80. The majority states that it is not changing the appellate standard of review, but nonetheless states that appellate courts should "more closely scrutinize the record" of the sentencing court. Majority op., ¶¶ 4, 77. Further, the majority declares that "[w]hat has previously been satisfied with implied rationale must now be set forth on the record." Majority op., ¶ 38. Yet, this court in *McCleary* stated:

> We will not, however, set aside a sentence for [failure to set forth the factors considered in rendering a sen-

tence]; rather, we are obliged to search the record to determine whether in the exercise of proper discretion the sentence imposed can be sustained. *It is not only our duty not to interfere with the discretion of the trial judge, but it is, in addition, our duty to affirm the sentence on appeal if from the facts of record it is sustainable as a proper discretionary act.*

*McCleary,* 49 Wis. 2d at 282 (emphasis added). *See also State v. Hall,* 2002 WI App 108, ¶ 19, 255 Wis. 2d 662, 648 N.W.2d 41. This statement from *McCleary* forms the basis of the independent review doctrine. Although the majority states that it is not deciding the application of the independent review doctrine, majority op., ¶ 18 n.6, this doctrine constitutes an integral part of *McCleary.* Clearly, if the majority is reaffirming *McCleary,* this doctrine should continue to apply.

¶ 81. I fear the majority opinion will be interpreted as an invitation for appellate courts to take a more active role in modifying sentences. The majority quotes with approval language contained in the court of appeals' certification in *State v. Crouthers,* 99–1307–CR, filed March 30, 2000, which suggests that appellate courts should take a more active role in modifying and overturning sentences. Majority op., ¶¶ 27, 30. Further, the majority subjects not only the final sentencing decision to appellate review, but also the rationale utilized by the circuit court: "[t]he rationale for sentencing decisions must be made knowable and subject to review." Majority op., ¶ 51. This language, considered in light of the requirement that circuit courts describe the goals of the sentence and *why* the constituent parts of sentence advance those objectives, majority op., ¶¶ 42, 45, as well as *how* the relevant sentencing factors influence the final decisions, majority op., ¶ 46, should not be interpreted as suggesting that appellate

courts may overturn or modify fully-explained, reasonable sentences, simply because the appellate court disagrees with the rationale of the sentencing court.

¶ 82. I agree with the majority that circuit courts need to explain their sentencing decisions by considering the relevant sentencing factors, setting forth the facts upon which the decisions are based, and describing the reasons why a particular sentence was given in light of the interrelationship between the goals of sentencing, the sentencing factors, and case specific facts. However, once those decisions are fully explained, and so long as they are reasonable and based on appropriate factors, appellate courts should not second-guess the reasoning behind those decisions.

¶ 83. As this court stated in *McCleary,* sentences that are explained and rendered in accordance with the appropriate factors are presumptively reasonable and should not be disturbed:

> An appellate court should not supplant the predilections of a trial judge with its own.... *[A]ll an appellate court can ask of a trial judge is that he state the facts on which he predicates his judgment, and that he give the reasons for his conclusion. If the facts are fairly inferable from the record, and the reasons indicate the consideration of legally relevant factors, the sentence should ordinarily be affirmed.* If there is evidence that discretion was properly exercised, and the sentence imposed was the product of that discretion, the trial judge fully complies with the standard.

*McCleary,* 49 Wis. 2d at 281 (emphasis added). However, the majority suggests that even if a sentence is fully explained and its rationale explicitly set forth on the record, it should nonetheless be subject to heightened scrutiny by appellate courts. *See* majority op., ¶¶ 4, 49, 51. I am apprehensive that the opinion of the majority

575

today will be read as signaling a departure from this court's previous "consistent and strong policy against interference with the discretion of the trial court in passing sentence." *McCleary,* 49 Wis. 2d at 281. As this court has previously stated: "sentencing decisions of the circuit court are generally afforded a strong presumption of reasonability because the circuit court is best suited to consider the relevant factors and demeanor of the convicted defendant." *State v. Borrell,* 167 Wis. 2d 749, 781–82, 482 N.W.2d 883 (1992). The majority recognizes this as an accurate statement of the law. Majority op., ¶ 18.

¶ 84. Thus, any reading of the majority opinion as an invitation to overturn or modify a sentence that has been fully explained and rationally justified would be in direct conflict with the dictates of *McCleary.* Under *McCleary,* once discretion is exercised, that is, so long as there is a reasonable explanation for the sentence given in connection with the appropriate factors and the facts of the case, an appellate court should uphold the sentencing determination of the circuit court. *McCleary,* 49 Wis. 2d at 280–81. Therefore, as long as the circuit court indicates that it considered the appropriate factors and explains how those factors relate to the ultimate sentence imposed, the circuit court's value judgments as to the weight and relevance of certain factors and how they relate to the imposed sentence should not be disturbed.

¶ 85. As this court has previously stated: "Judicial review of a judge's exercise of sentencing discretion is available in the appellate courts to prevent arbitrariness, capriciousness and unjustified disparity, but even that review 'must be made in light of the strong policy against interferences with the trial court's discretion in passing sentence.' " *In re Felony Sentencing Guidelines,*

120 Wis. 2d 198, 203, 353 N.W.2d 793 (1984)(quoting *State v. Killory,* 73 Wis. 2d 400, 408, 243 N.W.2d 475 (1976)). While these comments were made in the context of the old indeterminate sentencing system, nothing in the language or history of truth-in-sentencing (TIS) suggests that the legislature intended a greater degree of appellate interference with the circuit courts' discretion in rendering sentences. To be sure, "[w]ithout an elaborate system of sentencing grids, like there is in the federal system, no appellate-court-imposed tuner can ever modulate with exacting precision the exercise of sentencing discretion." *State v. Ramuta,* 2003 WI App 80, ¶ 25, 261 Wis. 2d 784, 661 N.W.2d 483.

¶ 86. Indeed, nothing about the nature of TIS changes the fundamental reality that circuit court judges, as members of their community who preside over sentencing, are in the best position to determine the appropriate sentence, rather than distant appellate tribunals examining a cold record:

> "[Appellate courts], distant in time and place from the sentencing scene, cannot understand the facts, know the nuances, see and hear the defendants and victims, and feel the forces in the courtroom as only a trial judge can. [An appellate court] cannot recapture the trial judge's unique opportunity to address the defendant, the victim, the friends and families, and the public to provide the moral and legal leadership—the justice—that sentencing, at its best, seeks to assure."

*Hall,* 255 Wis. 2d 662, ¶ 32 (Schudson, J., concurring) (quoting *State v. Williams,* No. 96–1584–CR, unpublished slip op. at 4–5 (Wis. Ct. App. April 8, 1997) (Schudson, J., concurring)). The advent of TIS does not alter the fact that judges sentence in the context of the community in which they were elected, each of which

has unique standards and needs. "[T]he interests of the public, too, will vary according to the particular community in which the crime was committed, the capacity of the community to rehabilitate the criminal, and the needs of that community for protection from that type of criminal activity." *In re Felony Sentencing Guidelines,* 120 Wis. 2d at 202.

¶ 87. While the arrival of the new sentencing guidelines[1] will provide a much needed tool for circuit courts and will hopefully result in less disparity between sentences for similar crimes and defendants, these guidelines will not replace the need for discretion on the part of the circuit courts. As the majority recognizes, majority op., ¶ 47 n.13, pursuant to Wis. Stat. § 973.017(10), compliance with the range of sentences provided in the guidelines is not mandatory and the defendant does not have a right to appeal on the basis that the court departed from the guidelines.

¶ 88. Furthermore, greater appellate interference in sentencing decisions would run contrary to the very purpose of TIS. While the legislature has indicated the need under TIS for circuit courts to explain the reasons for their sentencing decisions, Wis. Stat. § 973.017(10m), there is no indication that the legislature intended appellate courts to take a more active role in altering the length of a rationally explained sentence. The legislature's unambiguous overriding goal in enacting TIS was to "create certainty in the length of confinement at the time of sentencing." *State v. Champion,* 2002 WI App 267, ¶ 17, 258 Wis. 2d 781, 654 N.W.2d 242. The legislature wished to ensure that both

---

[1] *See* Wis. Stat. § 973.30; Wis. Stat. § 973.017(2)(a) (2001–02). All statutory references are to the 2001–02 version, unless otherwise noted.

the public and the defendant would be certain that the defendant would serve 100 percent of the sentence rendered and not a minute less. *Id.*, ¶¶ 13–16.[2] This purpose is entirely inconsistent with the concept of appellate courts actively modifying or overturning sentences that are rationally considered and fully explained on the record. *"It is not reasonable that the legislature would intend to provide both the defendant and the public with certainty regarding confinement and then permit the courts to undo that certainty . . . ."* *Id.*, ¶ 16 (emphasis added).

¶ 89. Yet, portions of the majority opinion seem to read as questioning the propriety and wisdom of TIS and the concomitant elimination of parole boards, suggesting that since parole boards no longer exist, appellate courts must now take a more active role in modifying sentences. Majority op., ¶¶ 28, 30–37.[3] Specifically, the majority states that "[t]he rule of law suffers when the sentencing judge's discretion is unguided and unchecked," majority op. ¶ 51, and that the advent of TIS requires more detailed sentencing standards "to assist in appellate review." Majority op., ¶ 30.

---

[2] Truth-in-Sentencing was enacted in two stages. Under TIS I, 1997 Wis. Act 283, § 419, an inmate's sentence could not be reduced based on good behavior while in prison. *See* Wis. Stat. § 973.01(4) (1997–98). However, under TIS II, 2001 Wis. Act 109, § 1143m, inmates convicted of certain felonies may petition the court for sentence reduction after completing a certain percentage of their sentence. *See* Wis. Stat. § 973.195.

[3] After discussing the philosophy behind the inclusion of parole boards under indeterminate sentencing and the elimination of parole by TIS, the majority remarks: "Experience has taught us to be cautious when reaching high consequence conclusions about human nature that seem to be intuitively correct at the moment." Majority op., ¶ 36.

While I agree with the majority that, in light of TIS, there is a "greater need to articulate on the record the reasons for the particular sentence imposed," majority op., ¶ 28, I fear that the majority's directive to "more closely scrutinize the record," majority op., ¶ 4, will be read as an invitation for appellate courts to modify or overturn sentences on a more frequent basis. However, such interference with the circuit courts' discretion would erode the certainty the legislature sought to provide with TIS.

¶ 90. Moreover, while I agree that it is necessary to impress upon the circuit courts the need for fully explained, rationally based sentences under the standards of *McCleary*, that reaffirmation should not be read as implying that there are now increased opportunities for appellate courts to interfere with sentencing discretion. The majority requires that circuit courts must comply with the following list of prerequisites in order to render a valid sentence. Circuit courts must: 1) explain the objectives of the sentence; 2) identify which objectives are of the greatest importance; 3) describe the facts relevant to these sentencing goals; 4) explain why the elements of the sentence advance those goals; 5) consider the 12 factors identified in *Harris* and three primary factors in *McCleary;* 6) explain how these factors influence the decision and are expected to meet the goals of the sentence; 7) consider the aggravating and mitigating factors listed in Wis. Stat. §§ 973.017(3) to (8); 8) consider probation as the first alternative and explain why probation is or is not sufficient and whether probation would further the goals of the sentence; 9) explain why the existence and duration of any prison term advances the objectives of the sentence; 10) explain why the existence and duration of any term of extended supervision advances the

580

objectives of the sentence; and 11) consider any applicable sentencing guidelines pursuant to Wis. Stat. § 973.017(2)(a). Majority op., ¶¶ 39–46.

¶ 91. Most of these requirements already exist by virtue of statutes or previous decisions of this court. However, in addition to reaffirming the requirements of *McCleary*, the majority today imposes an additional requirement on circuit courts. The majority requires that sentencing courts, "by reference to the relevant facts and factors explain how the sentence's component parts promote the sentencing objectives." Majority op., ¶ 46. That this requirement appears nowhere in *McCleary* is somewhat understandable, as courts did not determine the constituent parts of a sentence until the advent of TIS. While it is important to stress the need for circuit courts to consider all the applicable sentencing factors, appellate courts should not, under the auspices of closely scrutinizing the record, view these factors as a mandatory checklist that a circuit court must abide by to avoid reversal. As the majority aptly notes, the amount of explanation necessary to sustain a given sentence "will vary from case to case." Majority op., ¶ 39.

¶ 92. I also wish to emphasize that Judge DiMotto's sentencing decision would pass muster under the standards the majority articulates. Judge DiMotto's sentencing decision, covering 20 pages of transcript, painstakingly explained the rationale for Gallion's sentence and incisively described the relationship between the applicable facts and appropriate factors. This sentencing decision clearly was not of the type that necessitated today's decision. *See* majority op., ¶ 26 (concluding it is necessary to reinvigorate *McCleary* in light of sentences that are rendered in a "mechanical form"). Judge DiMotto provided an entirely logical, on-the-

record explanation for Gallion's sentence that considered all the appropriate sentencing factors and relevant facts of the case. While not necessarily the pinnacle of sentencing perfection, this type of sentence should be sufficient under any interpretation of *McCleary*.

¶ 93. Furthermore, because appellate courts will undoubtedly face an increasing number of requests to modify or overturn sentencing decisions on the basis of today's decision, I am troubled by the fact that the majority leaves many important questions unanswered by providing very little guidance as to how its reinvigoration of *McCleary* is to be applied in future cases. Must circuit courts comply with *all* of these requirements in every case? If a case involves a heinous crime, such as the one at bar, and the court does not discuss why probation is obviously inappropriate, may the circuit court's sentence be vacated for failure to discuss just this one factor? What standard is to be applied when reviewing whether the circuit court adequately explained *how* the parts of a sentence further the sentencing objectives identified or *why* the circuit court emphasized certain factors and minimized others? May a sentence be overturned or modified simply because the appellate court does not believe the sentence rendered would further the objectives identified or disagrees with the circuit court's determination as to which factors are most important? May an appellate court modify a sentence, even if the circuit court has fully complied with the above list of prerequisites, if the appellate court believes the objectives of the sentence could be accomplished by a less harsh sentence? May a sentence be overturned because the appellate court does not agree with the sentencing objectives the circuit court has identified? For example, if the circuit court sentences an offender while emphasizing the need for

deterrence and punishment, may an appellate court modify the sentence because it believes rehabilitation should have been the primary objective of the sentence? The majority leaves these questions unanswered by simply stating that the amount of explanation for a valid sentence "will vary from case to case," majority op., ¶ 39, and by failing to give appellate courts any guidance in determining how much explanation is enough.

¶ 94. These questions highlight the need to look to *McCleary* as a whole and presume that fully explained, rationally based sentences are valid. So long as the circuit court considers the case specific facts, the appropriate sentencing factors, and rationally explains why it believes the sentence is appropriate in light of the factors it considers most important and the goals it has identified, the appellate court should not second-guess the substance of those decisions. All that *McCleary* requires is that sentences be fully explained after considering the applicable sentencing factors and case specific facts. *McCleary,* 49 Wis. 2d at 281. Indeed, *McCleary* was chiefly concerned with circuit courts that offered no explanation for sentences; it did not contemplate that appellate courts would reverse sentencing determinations that were fully explained and based on legally relevant factors merely because they might disagree with the rationale employed by the circuit courts. *Id.* at 280–81. While a sentence should not be affirmed when the circuit court offers no explanation (as in *McCleary*), a sentence should not be overturned simply because the circuit court failed to discuss one of the legally relevant factors. Rather, *McCleary* requires that an appellate court search the record "to determine whether in the exercise of proper discretion the sentence imposed can be sustained." *Id.* at 282. Moreover,

while the majority repeatedly states the sentence rendered must call for the "minimum amount of custody or confinement" majority op., ¶¶ 23–24, 44 (quoting *McCleary*, 49 Wis. 2d at 276), it bears emphasizing that although "trial courts should impose ' "the minimum amount of custody" ' consistent with the appropriate sentencing factors, 'minimum' does not mean 'exiguously minimal,' that is, insufficient to accomplish the goals of the criminal justice system[.]" *Ramuta*, 261 Wis. 2d 784, ¶ 25 (explaining that "each sentence must navigate the fine line between what is clearly too much time behind bars and what may not be enough") (internal citations omitted).

¶ 95. Finally, it is worth emphasizing that the standards announced today should not be applied retroactively to cases that are final. Indeed, the majority recognizes that the requirements it articulates apply only to future cases. *See* majority op., ¶ 8. Were it otherwise, the validity of all sentences rendered heretofore under TIS would be in question. As discussed *supra,* the requirements announced today clearly supplement what was previously required under *McCleary.* Therefore, the rule the majority announces today should not be available to defendants sentenced under TIS whose cases are final. *See generally, State v. Lagundoye,* 2004 WI 4, 268 Wis. 2d 77, 674 N.W.2d 526 (discussing and applying Wisconsin's retroactivity rules for criminal cases).

¶ 96. Despite my concerns with the majority opinion, I join the ultimate mandate that Gallion's sentence should not be reversed.