STATE of Wisconsin, Plaintiff-Respondent,

v.

Jaredt E. SIMONIS, Defendant-Appellant.

Court of Appeals

*No. 2011AP2220–CR. Submitted on briefs March 15, 2012. —Decided June 28, 2012.*

2012 WI App 84

(Also reported in 819 N.W.2d 328.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Chandra N. Harvey*, assistant state public defender, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Robert G. Probst*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Vergeront, Higginbotham and Blanchard, JJ.

¶ 1. VERGERONT, J.   The sole issue on appeal is whether the circuit court properly exercised its discretion in ordering Jaredt Simonis to pay the DNA analysis surcharge pursuant to Wis. Stat. § 973.046(1g) (2009–10).[1] Simonis contends the circuit court did not properly exercise its discretion because the court's rationale was based on an impermissible consideration: the court's assessment that Simonis might in the future commit a crime that would generate costs for DNA analysis. We conclude that § 973.046(1g) does not authorize the circuit court to impose a DNA analysis surcharge for this reason. Instead, if Simonis commits a future crime in which there are costs for DNA analysis, payment of a surcharge to cover those costs will be a matter for the court in that case to decide, pursuant to

_____

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

the applicable statutes and case law. Accordingly, we reverse the portions of the judgment of conviction and of the postconviction order relating to the DNA surcharge and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶ 2. The complaint filed against Simonis alleged as follows. When officers arrived at the home where Simonis was staying to take him into custody on a pending warrant, Simonis ran from the officers and locked himself in a room. One of the officers could see that he had a rifle, and another officer heard a rifle being loaded. Simonis pointed the rifle at the window in the direction of an officer who was outside. A short time later Simonis fired two rounds toward officers outside, one of which hit a squad car. The officers returned fire, wounding Simonis in the arm. Simonis then came out of the house and was taken into custody.

¶ 3. The State charged Simonis with two counts of first-degree recklessly endangering safety while armed with a dangerous weapon, one count of endangering safety by use of a dangerous weapon with a habitual criminality enhancer, and one count of failure to comply with an officer's attempt to take him into custody, habitual criminality.

¶ 4. Pursuant to a plea agreement, Simonis pled guilty to one count of the reckless endangerment charge and to the count of failure to comply with an officer's attempt to take him into custody, enhanced for habitual criminality. The circuit court accepted the plea and sentenced Simonis to five years of initial confinement and five years of extended supervision on the first count, and to a concurrent sentence of one year and six

months of confinement and two years of extended supervision on the second count. With respect to the DNA surcharge, the court stated at sentencing:

> Given the seriousness of the offense, I think it would be appropriate for the State to take a DNA sample in the event any such conduct occurs in the future. So he's to provide a DNA sample and pay the costs of that.

¶ 5. Simonis filed a postconviction motion, asking the court to amend the judgment of conviction to remove the $250 DNA analysis surcharge. He argued that the court had not properly exercised its discretion because the identified permissible factors in *State v. Cherry*, 2008 WI App 80, 312 Wis. 2d 203, 752 N.W.2d 393, did not apply and speculation about a future case was not otherwise a permissible factor.

¶ 6. The court denied the motion, concluding that *Cherry* does not list the exclusive factors for imposing a DNA analysis surcharge and explaining its decision to impose the surcharge. The court viewed Simonis' conduct in shooting out the window in the direction of the officers and hitting a squad car as "reprehensible" and "extreme." If he would do that, the court reasoned,

> then I don't know what he's capable of doing [in the future] if he's either under the influence or if he's got some mental issues . . . . And if he engages in conduct like that in the future and then his identity is not known at the time but there's a DNA sample available and they can find some . . . evidence at the scene, that would be certainly appropriate.

## DISCUSSION

¶ 7. On appeal Simonis renews his argument that the circuit court erroneously exercised its discretion in imposing the surcharge based on the court's assessment

667

of the likelihood of Simonis committing a future crime that might generate DNA evidence that would need to be analyzed. He acknowledges that *Cherry* does not provide an exclusive list of permissible factors but, he asserts, the circuit court's rationale is inconsistent with the list of permissible factors identified in *Cherry* and is speculative. The State disagrees and contends that nothing in *Cherry* precludes the circuit court's reason for imposing the surcharge and that the court engaged in a proper exercise of discretion in deciding to impose the surcharge.

¶ 8. A circuit court's decision whether to impose a surcharge under WIS. STAT. § 973.046(1g) involves the exercise of the court's discretion. *Cherry*, 312 Wis. 2d 203, ¶ 5. We affirm a discretionary decision when the circuit court examines the relevant facts, applies a correct legal standard, and demonstrates a rational process leading to a reasonable conclusion. *State v. Long*, 2011 WI App 146, ¶ 4, 337 Wis. 2d 648, 807 N.W.2d 12 (citation omitted). In this case, determining whether the circuit court applied the correct legal standard requires that we construe § 973.046(1g) in the context of the case law. This presents a question of law, which we review de novo. *See id.* (citation omitted).

¶ 9. When we construe a statute we begin with the language of the statute and give it its common meaning. *State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. We interpret statutory language in the context of surrounding or closely related statutes, and we interpret it reasonably to avoid unreasonable results. *Id.*, ¶ 46. If, employing these principles, we conclude the

statutory language has a plain meaning, then we apply the statute according to that plain meaning. *Id.*

¶ 10. Placing Wis. Stat. § 973.046(1g) in its statutory context, we start with § 973.047, which addresses the requirements of providing a biological specimen. Section 973.047(1f) mandates that, when a court imposes a sentence for a felony and for certain sex crimes that are not felonies, "the court shall require the person to provide a biological specimen to the state crime laboratories for [DNA] analysis."[2] Section 973.047(1m) provides that "[t]he results from [DNA] analysis of a specimen provided under this section may be used only as authorized under s. 165.77(3)." Wisconsin Stat. § 165.77(3) requires that, when a specimen is received pursuant to § 973.047, the state crime laboratory "shall analyze the [DNA] in the specimen" and "shall maintain a data bank based on data obtained from [DNA] analysis of those specimens." In addition, the laboratory may compare the data obtained from these specimens and from other specimens and make the analysis available to law enforcement agencies in connection with criminal investigations and proceedings. § 165.77(3).

---

[2] Wisconsin Stat. § 973.047(1f) provides:

> If a court imposes a sentence or places a person on probation for a felony conviction or for a conviction for a violation of s. 165.765(1) [failure to submit a biological specimen as required], 940.225(3m) [fourth-degree sexual assault], 944.20 [lewd and lascivious behavior], or 948.10 [exposing genitals to a child, under certain circumstances], the court shall require the person to provide a biological specimen to the state crime laboratories for [DNA] analysis.

Pursuant to Wis. Admin. Code § Jus 9.04(1)(a)4. and (2)(c) (Sept. 2001), when a person ordered to provide a DNA specimen under Wis. Stat. § 973.04(1f) is, like Simonis, sentenced to prison, he or she "shall provide the specimen while in prison as directed by the department of corrections."

¶ 11.   There is no dispute that the two crimes for which Simonis was sentenced in this case were felonies, and that the circuit court therefore properly ordered that Simonis provide a biological specimen for DNA analysis pursuant to Wis. Stat. § 973.047. Thus, Wis. Stat. § 973.046, which addresses the imposition of a DNA analysis surcharge, comes into play.

¶ 12.   Wisconsin Stat. § 973.046(1r) requires the court to impose "a [DNA] analysis surcharge" of $250 if the court imposes a sentence or places a person on probation for certain sexual assault crimes, most of which are felonies.[3] Section 973.046(1g), the provision at issue in this case, applies to all other felonies. Section 973.046(1g) states: "[e]xcept as provided in sub. (1r), if a court imposes a sentence or places a person on probation for a felony conviction, the court may impose a [DNA] analysis surcharge of $250."

¶ 13.   In *Cherry* we addressed a circuit court's discretionary authority under Wis. Stat. § 973.046(1g), noting that this subsection does not set forth any factors for the circuit court to use in exercising its discretion. *Cherry*, 312 Wis. 2d 203, ¶ 8. In *Cherry* the defendant had previously provided a DNA specimen, *id.*, ¶ 2, although it is unclear from our opinion whether the defendant had previously paid a surcharge. The circuit court imposed a surcharge, and the stated reasons for this decision were that "the trial court's policy is to impose the surcharge whenever possible"

---

[3] Wisconsin Stat. § 973.046(1r) provides in full:

If a court imposes a sentence or places a person on probation for a violation of s. 940.225 [sexual assault], 948.02(1) or (2) [first- and second-degree sexual assault of a child], 948.025 [repeated sexual assault of the same child], 948.085 [sexual assault of a child placed in substitute care], the court shall impose a [DNA] analysis surcharge of $250.

and "the court has the statutory authority to order the surcharge for the purpose of supporting the DNA database program." *Id.*, ¶ 6. We concluded the record did not reflect a proper exercise of discretion because the record did not show that the court considered all factors pertinent to the case before it and did not set forth the court's rationale. *Id.*, ¶¶ 9–11. In reversing and remanding for the circuit court to exercise its discretion, we declined to provide a definite list of factors for the circuit courts to consider. *Id.*, ¶ 10. However, we did state that "some factors to be considered could include: (1) whether the defendant has provided a DNA sample in connection with the case so as to have caused DNA cost; (2) whether the case involved any evidence that needed DNA analysis so as to have caused DNA cost; (3) financial resources of the defendant; and (4) any other factors the trial court finds pertinent." *Id.*

¶ 14. While *Cherry* provides the framework for our analysis, it does not resolve the issue before us. We agree with Simonis that the first two identified factors in *Cherry* relate to costs actually incurred. However, Simonis' argument does not persuasively explain why the fourth factor—"any other [pertinent] factors"—does not encompass the circuit court's rationale.

¶ 15. The State, for its part, correctly points out that, unlike the circuit court in *Cherry*, the circuit court in this case did consider the facts of this particular case and did state its rationale. We agree the circuit court did that. However, the critical issue not addressed by the State is whether the circuit court's rationale—the potential need for analysis of evidence collected at the scene of a crime that may possibly be committed by Simonis in the future—is a permissible rationale under the statute.

671

¶ 16. We conclude it is not a permissible rationale because it is based on an unreasonable reading of the statute. WISCONSIN STAT. § 973.046 plainly authorizes a circuit court to impose a surcharge—either a mandatory surcharge under § 973.046(1r) for the crimes specified there or a discretionary surcharge under § 973.046(1g) for all felonies not included in subsection (1r)—even if a person has previously been ordered to provide a DNA specimen pursuant to WIS. STAT. § 973.047(1f). *See State v. Jones*, 2004 WI App 212, ¶¶ 7–11, 277 Wis. 2d 234, 689 N.W.2d 917 (rejecting the defendant's argument that §§ 973.046 and 973.047 do not permit the circuit court to impose a surcharge unless a DNA specimen is ordered in the same case; affirming as a proper exercise of the court's discretion an order that the defendant pay the surcharge unless he shows he paid it in another case). Indeed, there is nothing in the language of either § 973.046 or § 973.047 that prevents a surcharge from being imposed as part of the sentence for the later crime, even if a surcharge has already been imposed and paid in one or more prior cases, if additional costs for DNA analysis are incurred in the later case.

¶ 17. Thus, if Simonis does commit a crime in the future that comes within WIS. STAT. § 973.046(1r), the court will be required to impose a surcharge. If, on the other hand, the future crime comes within § 973.046(1g) and, as the circuit court here postulated, DNA-related costs are incurred in the new case in analyzing DNA evidence collected at the crime scene and comparing it to the data from Simonis' specimen, then those costs will be an appropriate factor for the circuit court in that case to consider in deciding whether to impose a surcharge. *See Cherry*, 312 Wis. 2d

203, ¶ 10 (second factor is "whether the case involved any evidence that needed DNA analysis so as to have caused DNA cost"). Because the statutory scheme allows the imposition of a surcharge if Simonis is sentenced in the future for a crime covered by § 973.046(1r) or for a crime covered by § 973.046(1g) when additional costs relating to his DNA specimen are actually incurred in that case (within the proper exercise of the circuit court's discretion), it is unreasonable to construe those provisions to allow an imposition of the surcharge now on the theory that such costs *might* be incurred in the future.

¶ 18. We recognize that, for various purposes during the course of a sentencing, a circuit court typically has the difficult obligation of attempting to predict whether a defendant appears likely to commit crimes in the future. *See State v. Gallion*, 2004 WI 42, ¶ 23, 270 Wis. 2d 535, 678 N.W.2d 197 (recognizing that the sentence imposed should be "consistent with the protection of the public"). Therefore, the problem here is not that the court made predictions of this general type, based on the record developed by the parties, to the extent this was appropriate for other sentencing purposes. Our narrow focus here is on the application of such a prediction in the specific context of assessing the DNA surcharge, given the statutory scheme at issue.

¶ 19. Accordingly, we conclude the circuit court employed an incorrect legal standard in exercising its discretion. We therefore reverse and remand for the circuit court to consider factors pertinent to this case other than the possibility of Simonis committing a future crime. Because we are remanding for this purpose, we address an issue that will likely arise on remand: What costs may the circuit court properly

consider in exercising its discretion on the decision whether to impose the surcharge?

■

¶ 20.  It appears undisputed that, at the time the circuit court ordered that Simonis provide a DNA specimen and pay the surcharge, a DNA specimen had not been collected from Simonis during the course of this case and no evidence in this case required a DNA analysis.[4] Simonis argues that, because of this, neither the first nor the second *Cherry* factors is applicable here. Evidently Simonis is interpreting the first *Cherry* factor—"whether the defendant has provided a DNA sample in connection with the case so as to have caused DNA cost"—to exclude the cost of collecting and analyzing a DNA specimen that is ordered by the court at sentencing. In addition, Simonis is evidently reading the fourth *Cherry* factor—"any other factors the court finds pertinent"—not to include this cost. Simonis' reading of *Cherry* on this issue might be a reasonable one if *Cherry* is read in isolation. However, *Long*, decided after *Cherry*, does not support this reading of *Cherry*.

¶ 21.  In *Long* the circuit court ordered the defendant to "provide a DNA sample and to pay a DNA surcharge if he had not previously provided a sample or paid a surcharge pursuant to any other cases . . . ." *Long*, 337 Wis. 2d 648, ¶ 2. Long did not contend that he had already provided a specimen or paid a surcharge. *Id.*, ¶ 8. The circuit court stated the rationale for its order as follows:

> If this is the defendant's first felony case in which he is providing a sample, there is a cost involved in connec-

---

[4] Our statement that "it appears undisputed" does not preclude, on remand, evidence on this point if there is a dispute.

tion with this case. There is a cost of drawing the sample, a cost for having it analyzed, and a cost for having it put into the [S]tate DNA database .... The court did not simply impose a DNA surcharge because the court could do so, but because the [S]tate incurred a cost for DNA in this case where there was no prior DNA taken or submitted.

*Id.* (alterations in original).

¶ 22. In *Long* we concluded this was a proper exercise of the circuit court's discretion. *Id.*, ¶ 9. We explained that the court's reasoning was consistent with the rationale expressed in *Jones* and based on a consideration of "factors that we suggested in *Cherry* could be pertinent to the reasoned exercise of discretion." *Id.*, ¶ 8.

¶ 23. *Long* was decided after the notice of appeal was filed in this case, so it is understandable that neither party referred to it in the circuit court. However, although *Long* was decided before the appellate briefing, neither party discusses how our conclusion in *Long* bears on this case.[5] But there is no question that in *Long* we concluded that the taking of a DNA specimen, analyzing it, and putting it in the DNA database when a specimen has been ordered by the circuit court pursuant to Wis. Stat. § 973.047 is a proper consideration in imposing a surcharge—if a surcharge has not previously been paid based on those same costs. Accordingly, on remand the circuit court may consider this factor along with those specifically identified in *Cherry* and "any other factors the [circuit] court finds perti-

---

[5] The State cites *State v. Long*, 2011 WI App 146, 337 Wis. 2d 648, 807 N.W.2d 12, only with reference to the standard of review for discretionary decisions, and Simonis does not mention *Long* at all.

nent" in deciding whether to impose a surcharge on Simonis.[6] *See Cherry*, 312 Wis. 2d 203, ¶ 10.

## CONCLUSION

¶ 24.   We reverse the portions of the judgment and of the postconviction order relating to the DNA surcharge and remand for further proceedings consistent with this opinion.

*By the Court.*—Judgment and order reversed in part and cause remanded for further proceedings.

■■■■

[6] In *Long* we did not specify whether the consideration we approved of there came within the first *Cherry* factor or the fourth, and it is unnecessary for us to decide that question in this case.