COURT OF APPEALS
DECISION
DATED AND FILED

September 14, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2022AP244-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2020CF1071

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

LEROY RICE, JR.,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and orders of the circuit court for Kenosha County: LARISA V. BENITEZ-MORGAN and GERAD DOUGVILLO, Judges. *Affirmed.*

¶1 LAZAR, J.[1] Leroy Rice, Jr., appeals from his judgment of conviction and the denials of his motion for resentencing or sentence modification and subsequent motion for reconsideration of his postconviction motion. He seeks a new sentencing based on inadequate waiver of his right to appear in person or, in the alternative, sentence modification based on a new factor that, he asserts, supports overturning the circuit court's denial of his participation in the substance abuse program. This case involves the interplay of COVID-19[2] and the alterations to rules regarding in-person appearances during this pandemic to ensure the safety of the public and the courts, as well as established case law with respect to sentence modifications. Rice has not established that the plans for remote proceedings initiated by both the Wisconsin Supreme Court and Kenosha County violated his right to an in-person appearance, has actually waived his right to appear in person, and has failed to show a new factor with respect to the sentence imposed on him. Thus, this court affirms the circuit court's judgment and orders.

## BACKGROUND

¶2 On August 23, 2020, police officers received a report of domestic battery by Rice against A.N., the mother of his children.[3] They observed swelling along her right eyebrow as well as lacerations on her face and lip. Although no longer in a relationship, A.N. alleged that Rice suspected her of cheating and

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] The World Health Organization declared a global pandemic of Coronavirus Disease 2019 (COVID-19) on March 11, 2020, due to widespread human infection worldwide.

[3] In accordance with Marsy's Law, WIS. CONST. art. I, § 9m(2), this court uses only initials to reference the victim in this case.

entered her car to punch her in the face and then hit the car and broke the windshield with a rock.

¶3 Rice was charged, and a criminal complaint alleging four counts[4] was filed on September 22, 2020. One of the counts was for a violation of a prior no contact order with A.N. There was an initial appearance on that same date, and a preliminary hearing on October 15, 2020. There were two final pretrial hearings in front of the circuit court (on January 21, 2021, and February 18, 2021) and then a jury status hearing on May 28, 2021. At none of these court hearings did Rice appear in person. Instead, he appeared by Zoom videoconference. There is a mixed bag of waivers to in-person appearances by Rice's counsel. For example, at the start of the February 18, 2021, final pretrial, counsel[5] stated that "[w]e're both appearing by Zoom. We have no objection to proceeding in this manner." At the remaining Zoom appearances (aside from the preliminary hearing) there is no such statement.

---

[4] The complaint alleged the following counts against Rice: (1) Battery, Domestic Abuse, Repeater, Domestic Abuse Repeater; (2) Criminal Damage to Property, Domestic Abuse, Repeater, Domestic Abuse Repeater; (3) Disorderly Conduct, Domestic Abuse, Repeater, Domestic Abuse Repeater; and (4) Violate No Contact Order – Misdemeanor Conviction, Repeater, Domestic Abuse Repeater.

[5] It appears that Rice's counsel may have made a similar statement at the start of the preliminary hearing, where the transcript indicates that counsel said: "I'm appearing by Zoom from my home. Mr. Rice is appearing by Zoom from KCDC [Kenosha County Detention Center]. We have no objection to proceeding in this matter." The word "matter" may have been mistyped for the word "manner" when taken in context and compared to the prior statement.

¶4     Interestingly, a fact not mentioned by either party is that the circuit court[6] advised Rice of his right to be present in court for any plea hearing at the January, 2021, final pretrial:

> THE COURT: All right. February 18th at 3:30. Mr. Rice, if this does end up resolving, I don't know what's happening, and if it's—Like I said, it's your case. You do what you want, okay, because that's the way it works. But if it does resolve and you guys decide you want to enter a plea, you have an absolute right to be in court physically for that. I have no control over the jail in terms of when you come out, if they make you go back into quarantine for however many days or anything like that. That's—that's—I can't touch that.
>
> But if you wanted to physically be present in court say, for example, the entry of a plea, I could make that happen. Would you like to have the next hearing date in February by Zoom so that you don't have to do the quarantining thing if they make you do that or what would you like to do?
>
> THE DEFENDANT: Zoom is okay.
>
> THE COURT: Okay. Anybody force you or threaten you or coerce you in any way to not be physically present in court?
>
> THE DEFENDANT: No, ma'am.
>
> THE COURT: Okay. Court does find that Mr. Rice is knowingly, intelligently and voluntarily waiving his absolute right to be present in court for the possibility of entering a plea.
>
> So we will do that February date by Zoom. All right.

¶5     The best laid plans aside, Rice did appear at the February, 2021, final pretrial by Zoom, but the matter was set for a jury trial and Rice requested

---

[6] The Honorable Larisa V. Benitez-Morgan was assigned to and presided over this case through plea and sentencing until August 1, 2021, when the matter was assigned to the Honorable Gerad Dougvillo, who ruled upon the post conviction motion.

and obtained new counsel, who appeared starting at the jury status. The matter was resolved short of a trial and a plea and sentence date was set for June 7, 2021. On that date, Rice pled guilty to Count 1 (Battery, Domestic Abuse, Repeater, a misdemeanor) and Count 4 (Violate No Contact Order, Repeater, a misdemeanor). The other charges were all dismissed. The circuit court accepted Rice's plea.

¶6 During the plea colloquy and before questioning Rice about the signed plea questionnaire and waiver of rights form, the circuit court explained and summarized the plea procedure for Rice as follows:

> THE COURT: Okay. All right. Mr. Rice, you've heard what everybody has said in regards to the resolution. Was that your understanding of what was going to happen today?
>
> THE DEFENDANT: Yes, ma'am
>
> THE COURT: All right. Now, I'm going to show you the Plea Questionnaire and Waiver of Rights form, and we're going to go through that, sir. However, when I do bring that up on your screen, you're going to lose what's in the courtroom but everybody can still see you. Do you understand that, sir?
>
> THE DEFENDANT: Yes, ma'am.

¶7 Rice was sentenced that same date: eighteen months of initial confinement in prison and six months of extended supervision on Count 1, consecutive to two prior cases, and eighteen months of initial confinement in prison and six months of extended supervision on Count 4, consecutive to Count 1 and the two prior cases. Pursuant to WIS. STAT. §§ 973.01(3g), (3m), 302.045 and 302.05(a)(2), as to Count 1, the circuit court found that, due to the nature of the charges, Rice was not eligible for either the challenge incarceration program (CIP)

or the substance abuse program[7] (SAP). The circuit court did find Rice eligible for the CIP and ineligible for the SAP as to Count 4.

¶8 At sentencing, there were references to Rice's substance abuse needs by the State, to wit:

> And then obviously he's a repeater because he was also abusing drugs by possessing cocaine.
>
> In terms of the defendant's remaining prior convictions, he has a possession of marijuana and four bail jumping convictions in a 2012 case ....
>
> ....
>
> Certainly he has needs in the areas of domestic abuse, batterer's treatment and then also he has the recent drug conviction so I think that's an area of need as well.

¶9 The circuit court also noted that Rice had completed several programs while incarcerated pending the sentencing, including an AODA component, but then in its analysis as to the appropriate programming for sentencing, the circuit court made the following statements:

> District attorney's mentioned something about perhaps because you had the possession of cocaine you might have some drug issues. I don't know whether you're using it for personal use or whether you were selling it. I have no idea about that ....
>
> ....
>
> ... I am making you eligible for the Challenge Program. I will not make you eligible for Substance Abuse because I don't have any—enough evidence to show that you have a substance program need.

---

[7] CIP is a program including manual labor, counseling and treatment, military drill and ceremony, and strenuous physical exercise. WIS. STAT. § 302.045. SAP, also known as earned release program or "ERP," is a program that provides substance abuse treatment. WIS. STAT. § 302.05. Upon completion of either program, an inmate is entitled to have his or her remaining confinement time converted to extended supervision. Secs. 302.045(3m) and 302.05(3)(c).

¶10     At no point did either Rice or his counsel object to that statement, nor did they attempt to argue that Rice did, in fact, have substance abuse needs that would warrant eligibility for the SAP. The judgment stood as issued.

¶11     Rice filed a notice of intent to pursue postconviction relief on the date of sentencing.

¶12     Following his sentence, and prior to assignment to a specific prison, the Department of Corrections (DOC) undertook additional assessments and evaluations of Rice, as it does with all incoming prisoners. *See* WIS. ADMIN. CODE § DOC 302.01 (through July, 2022) (referencing the legislature's grant of authority to DOC). These are done to assist DOC in classifying "every inmate based on factors related to public, staff, and inmate safety" as well as to "[m]atch inmate needs to institution resources when possible." WIS. ADMIN. CODE § DOC 302.02(1)(b)-(c). One of the purposes of the assessment and evaluation is to evaluate an inmate's medical and mental health status and treatment needs. WIS. ADMIN. CODE §§ DOC 302.11(11), 302.13. However, as with a presentence investigation, the preprison assignment evaluation relies, for the most part, on information provided directly by the defendant. Thus, a defendant's own thoroughness or truthfulness in responding to DOC's inquiries could play a part. Self-reporting has its deficiencies.

¶13     On August 20, 2021, the DOC created an inmate classification report for Rice. That report indicated that Rice had "Substance Use Disorder" category three (out of four), but also listed Rice as "unlikely" on the "COMPAS Substance Abuse Criminogenic Scale." That meant, according to the DOC Division of Adult Institutions Policy and Procedures Manual on Substance Use Disorder/Earned Release Programs, effective April 12, 2021, that there was "[n]o [t]reatment"

recommended, but that there could be "100 to 150 hours" of possible programming.

¶14 Rice filed a motion for resentencing or sentence modification on December 1, 2021. That motion was based upon the same two grounds Rice asserts in this appeal: (1) "Mr. Rice should be granted resentencing for failure to waive his right to be physically present at sentencing under WIS. STAT. § 971.04(1)(g)"; and (2) "Alternatively, the court should grant sentence modification based on a new factor" (seeking eligibility for the SAP).

¶15 The State filed a letter brief on January 18, 2022, objecting to both parts of Rice's motion. The State attached six documents, including the Wisconsin Supreme Court's orders with respect to operation of the courts during COVID-19 and the "COVID-19 Circuit Court Operational Plan for Kenosha County for Phase 3 and resumption of Jury Trials" dated July 23, 2020, (hereinafter referred to as the "Operational Plan").

¶16 Paragraph B of the Operational Plan, created in accordance with the Wisconsin Supreme Court's orders covering COVID-19 and remote hearings, provides as follows:

> B. Remote Hearings
>
> 1. It is still the intent of the Kenosha County judiciary to provide remote video conferenced hearings for all hearings until the public health emergency is ended.
>
> 2. Pursuant to Wisconsin Statute 885.50 et seq, the Circuit Court shall continue to notice hearings for video or phone conferencing. **Parties objecting to video conferencing shall notify the Court to which the matter is assigned as soon as possible.** The Court

8

> > will decide the objection pursuant to the standards set forth in statute.
>
> 3. Juveniles, Parties at Chips hearings, and **Criminal Defendants shall notify the Court at the plea hearing if they wish to be present in person for disposition/sentencing hearings.** If a request for in person hearing is made, the Clerk may schedule the matter in such a way to limit the number of in person hearings at one time slot.

(Emphasis added.)

¶17 Without holding a hearing, the circuit court[8] issued a written decision and order, dated January 26, 2022, in which it denied Rice's motion for resentencing in its entirety.[9] The court found that the "hearing as conducted was proper and lawful" and that "there is no suggestion the court abused it[s] discretion during sentencing and [the] simple existence of this classification report is not worthy of having any impact on the Court's sentencing and thereby is not a 'new factor.'"

¶18 Subsequently, Rice filed a motion for reconsideration, which the circuit court denied. Rice appeals.

## DISCUSSION

### I. In-person appearances.

¶19 The first issue here, regarding in-person appearances, involves not only a question of statutory interpretation but the application of that statute to the

---

[8] Now, the Honorable Gerad Dougvillo.

[9] The next day, January 27, 2022, Rice, on his own, filed a reply brief.

facts at hand. That is something that this court "review[s] independently of the circuit court's decision, but benefitting from its analysis." **State v. Soto**, 2012 WI 93, ¶14, 343 Wis. 2d 43, 817 N.W.2d 848. "[W]hether a defendant's undisputed statements and actions in a criminal proceeding constitute waiver of a statutory right is a question of law for [the appellate court's] independent review." **Id.**

¶20 Pursuant to WIS. STAT. § 971.04(1)(g), Rice "had a statutory right to be present in the same courtroom as the judge when he made his guilty plea because the judge accepted [Rice's] plea and pronounced judgment in regard to the crime to which [Rice] pled." *See* **Soto**, 343 Wis. 2d 43, ¶27. *See also* **State v. Borrell**, 167 Wis. 2d 749, 772, 482 N.W.2d 883 (1992), *overruled on other grounds by* **State v. Greve**, 2004 WI 69, ¶31, 272 Wis. 2d 444, 681 N.W.2d 479 (stating that one of the defendant's due process rights at sentencing is "to be present at the hearing").

¶21 Because this statutory right to be physically present in the courtroom at sentencing "is particularly important to the actual or perceived fairness of the criminal proceedings," the court in **Soto** held that "if this right is to be relinquished, it must be done by waiver, the 'intentional relinquishment of a known right.'" **Soto**, 343 Wis. 2d 43, ¶40 (quoting **Brunton v. Nuvell Credit Corp.**, 2010 WI 50, ¶37, 325 Wis. 2d 135, 785 N.W.2d 302).

¶22 That being said, it is important to note that "[a]lthough a formal colloquy is often employed to show waiver, it is not the only way in which waiver may be shown." **Soto**, 343 Wis. 2d 43, ¶45. Here, Rice asserts that there was neither a colloquy or any sort of waiver nor was there a discussion as to whether he could hear and see everyone appearing by Zoom. The State also believes that there was no waiver on the record at the plea and sentencing on June 7, 2021, but

relies upon the orders issued by the Wisconsin Supreme Court pursuant to its administrative and superintending authority over the courts and the judicial system. *See* WIS. CONST. art. VII, § 3; ***In re Kading***, 70 Wis. 2d 508, 519-20, 235 N.W.2d 409 (1975). That authority, along with the duties to protect the court system and the public from the unprecedented impact of COVID-19, led our supreme court to issue several orders on court administration with respect to in-person appearances and more[10] starting on March 22, 2020.

¶23    In one of the first Wisconsin Supreme Court orders ("In re the Matter of Jury Trials During the COVID-19 Pandemic," issued March 22, 2020, and amended April 15, 2020), that court ordered:

> [T]hat the courts of the State of Wisconsin remain open. Nevertheless, all in-person proceedings in all appellate and circuit courts are hereby suspended until further order of this court. This suspension may be modified or terminated by court order as circumstances may warrant. The court will provide advance notice prior to terminating this order.
>
> All judges, court commissioners and court clerks are required to utilize available technologies—including e-mail, teleconferencing, and video conferencing in lieu of in-person courtroom appearances.
>
> Judges may waive in-person appearance requirements otherwise required by statute. See 2019 Wis. Act 185....
>
> The suspension of in-person proceedings is subject to the following exceptions if remote technology is not practicable or adequate to address these matters:
>
>     ....

---

[10] In fact, the Wisconsin Supreme Court order titled "In re the Matter of the Extension of Orders and the Interim Rule Concerning Continuation of Jury Trials, Suspension of Deadlines for Non-Criminal Jury Trials, And Remote Hearings During the COVID-19 Pandemic," dated May 22, 2020, at page 4, note 1, specifically suspended the provisions of WIS. STAT. § 885.60(2)(b) and (d). Thus, the latter paragraph, requiring circuit courts to sustain any objections to remote appearances, was suspended until further order.

- Proceedings necessary to protect the constitutional rights of criminal defendants and juveniles.

¶24 It was pursuant to these orders that Kenosha County developed[11] and promulgated its Operational Plan that was in effect when Rice was sentenced.

¶25 This court agrees that the Operational Plan, authorized by the express orders of the Wisconsin Supreme Court, made specific provisions for in-person appearances by criminal defendants. All hearings were to be "remote video conferenced hearings" in order to protect the public. Any party that objected to such a remote video conferenced hearing had to notify the circuit court of its objection. Rice did not object when he received the notice of the videoconference hearing set for June 7, 2021. He did not object at any point on June 7, 2021.

¶26 Demonstrating that Kenosha courts were cognizant of criminal defendants' right to be present for certain phases of their cases, the Operational Plan included a special section that instructed that "[c]riminal [d]efendants shall notify the Court at the plea hearing if they wish to be present in person for disposition/sentencing hearings." Rice did not so notify the circuit court at any point in time prior to or at his sentencing.

¶27 Rice contends his failure to object in conformance with the Operational Plan during the midst of a global pandemic was not sufficient to be

---

[11] *See* Wisconsin Supreme Court Order, "In re the Matter of the Extension of Orders and the Interim Rule Concerning Continuation of Jury Trials, Suspension of Deadlines for Non-Criminal Jury Trials, And Remote Hearings During the COVID-19 Pandemic" issued May 22, 2020, at page 5.

considered a waiver of his right to be physically present at the plea and sentencing. He is incorrect.

¶28    The orders from the Wisconsin Supreme Court altered the practices in all the courts in the state.  Objections to remote hearings no longer received an automatic grant of an in-person hearing under the statutes.[12]  Local county circuit courts were instructed to create operational plans that had to be approved all the way up to the Wisconsin Supreme Court.  Those plans carried the imprimatur of the Wisconsin Supreme Court.  Rice was not automatically entitled to have an in-person plea and sentencing on June 7, 2021.  If he wanted to pursue an in-person appearance, he had to take steps to obtain the exceptions to the Wisconsin Supreme Court orders and Kenosha's Operational Plan.  He did not do so.

¶29    If the orders from the Wisconsin Supreme Court and the Kenosha Operational Plan were not sufficient to have altered the rules on in-person appearances, this court further notes that there was a thorough colloquy on January 21, 2021, between the circuit court and Rice during which the circuit court both explained Rice's right to be physically present in the courtroom for a plea and/or sentencing and acknowledged Rice's voluntary, knowing, and intelligent decision to waive that right.  That colloquy and waiver, albeit in the context of an anticipated February, 2021, plea and sentencing date, is sufficient to have advised Rice of his due process rights and to obtain a valid waiver of those rights, regardless that the actual sentencing took place in June.

---

[12] *See supra* note 10.

¶30    As to whether there was a discussion of Rice's ability at the Zoom plea and sentencing to hear and see everyone clearly, the circuit court did inquire[13] if Rice understood what was happening on that date, did explain how the "share screen" function on Zoom would display the plea questionnaire and waiver of rights form, and did explain what Rice would be seeing on his screen.

¶31    Accordingly, either by the Wisconsin Supreme Court COVID-19 orders and the Operational Plan, or through the February 21, 2021 colloquy, Rice's statutory right to an in-person appearance at his plea and sentencing on June 7, 2021, was not violated; this right was knowingly, voluntarily, and intelligently waived. Finally, even if the Wisconsin Supreme Court orders and Kenosha's Operational Plan and actual waiver colloquies do not hold sway, Rice has failed to show that he suffered any harm due to the remote sentencing. Thus, this part of his appeal fails.

## II.    Sentence modification.

¶32    It is well established that a "circuit court has the 'inherent power' to modify a previously imposed sentence after the sentence has commenced." *State v. Grindemann*, 2002 WI App 106, ¶21, 255 Wis. 2d 632, 648 N.W.2d 507 (citation omitted). This does not mean, however, that a circuit court may reduce a sentence merely upon "reflection" or "second thoughts." *State v. Wuensch*, 69 Wis. 2d 467, 480, 230 N.W.2d 665 (1975) (citation omitted); *Scott v. State*, 64

---

[13] Obviously, best practices would have had the circuit court inquire at every Zoom hearing if all or any of the parties to the hearing objected to remote appearances and whether they could see and hear everyone. This court recognizes, however, that circuit courts operate under strict deadlines and heavy caseloads (made even heavier by COVID-19) and that, sometimes, best practices are not always followed. That alone does not translate to automatic violations or errors.

Wis. 2d 54, 59, 218 N.W.2d 350 (1974). Rather, sentence modification may only be done if there are "new factors" brought to the court's attention, or the original sentence was "unduly harsh or unconscionable." *Grindemann*, 255 Wis. 2d 632, ¶21 (citations omitted); *Wuensch*, 69 Wis. 2d at 479. Only the first prong is alleged in this appeal.

¶33　This court in *State v. Vaughn*, 2012 WI App 129, ¶35, 344 Wis. 2d 764, 823 N.W.2d 543, set out what it means to have a "new factor," to wit:

> Under established law, a "new factor" may justify a circuit court's exercise of its sentence-modification discretion. A "new factor" is "a fact or set of facts highly relevant to the imposition of sentence, but not known to the trial judge at the time of original sentencing, either because it was not then in existence or because, even though it was then in existence, it was unknowingly overlooked by all of the parties." *Rosado v. State*, 70 Wis. 2d 280, 288, 234 N.W.2d 69, 73 (1975); *see also [State v.] Harbor*, 2011 WI 28, ¶52, 333 Wis. 2d [53], 797 N.W.2d [828] (reaffirming *Rosado*'s definition).

¶34　The defendant bears the burden of demonstrating the existence of a new factor by clear and convincing evidence. *Vaughn*, 344 Wis. 2d 764, ¶35; *State v. Ninham*, 2011 WI 33, ¶89, 333 Wis. 2d 335, 797 N.W.2d 451. The defendant must also establish "that the new factor justifies modification of the sentence." *Harbor*, 333 Wis. 2d 53, ¶38. There is no automatic entitlement to a sentence modification. *Ninham*, 333 Wis. 2d 335, ¶89. The court, in its sound discretion, is to determine whether a new factor justifies sentence modification. *Harbor*, 333 Wis. 2d 53, ¶37.

¶35　Whether a fact or set of facts constitutes a new factor is a question of law reviewed independently by this court. *Harbor*, 333 Wis. 2d 53, ¶33. The decision on whether to modify a sentence in the light of an established new factor is committed to the circuit court's discretion. *Ninham*, 333 Wis. 2d 335, ¶89.

This court will "review such decisions for erroneous exercise of discretion." *Harbor*, 333 Wis. 2d 53, ¶33.

¶36 Rice contends that while his actual substance abuse needs were in existence on the date of sentencing, they were unknowingly overlooked by the circuit court and the parties. He also asserts that the DOC staffing report (that was created upon the start of his prison incarceration) was not in existence at the time of sentencing and that it is a new factor that warrants sentence modification. Finally, Rice contends that the circuit court applied the wrong standard when it denied his motion for reconsideration. Rice requests that this matter be remanded for new sentencing as to Count 4 (Violate No Contact Order, Repeater), that properly considers his substance abuse needs. This is relevant because eligible inmates who successfully complete the SAP (or the CIP) may obtain early release from initial confinement. *See State v. Lynch*, 2006 WI App 231, ¶4, 297 Wis. 2d 51, 724 N.W.2d 656; *see also* WIS. STAT. §§ 302.05(3)(c)2, 302.045(3m)(b).

¶37 The State disputes that a new factor exists. It argues that the circuit court did not ignore prior convictions, but rather did not give them much weight, and that the inmate classification report is lacking in detail. Either way, the State asserts Rice has failed to meet his burden of proof that this need (for substance abuse treatment) was highly relevant to the imposition of the sentence at hand. This court agrees.

¶38 Program eligibility is assessed using the same sentencing considerations that govern the ultimate sentencing determination. *State v. Steele*, 2001 WI App 160, ¶¶8-11, 246 Wis. 2d 744, 632 N.W.2d 112.

¶39 In order to prevail on this part of his appeal, Rice must prove that there was a "new factor" that required consideration by the circuit court and that

the "new factor" was highly relevant to the imposition of his sentence for violating the no contact order. Rice must also show that it was not known by the original sentencing court at the time of sentencing in June 2021, either because it was not in existence on that date or because it had been unknowingly overlooked by all parties.

¶40 Rice's substance abuse needs were not overlooked by the circuit court and the parties. The State specifically called to the circuit court's attention Rice's past abuse of drugs by his possession of cocaine case and his prior conviction for possession of marijuana and stated that because Rice also "has the recent drug conviction so [the State] think[s] that's an area of need as well." The issue of substance abuse was clearly raised at sentencing.

¶41 The circuit court heard those statements and mentioned them in the sentence; the failure to specifically mention each prior conviction does not indicate that the court did not know there were other convictions for drug use. As well, merely because the court did not heed the implication that Rice had a substance abuse need (because it felt there was not "enough evidence to show that [Rice has] a substance program need"), does not mean that the possibility of that need was unknowingly overlooked. To the contrary, it was actually considered by the court, but the court determined that the other sentencing factors—the gravity of the offense and protection of the community (especially the victim)—were more relevant and important considerations in its sentencing decision. *See State v. Gallion*, 2004 WI 42, ¶40, 270 Wis. 2d 535, 678 N.W.2d 197.

¶42 Next, the DOC Inmate Classification Report was created from Rice's self-reports. It identifies a substance abuse need, but it categorizes this

issue as not requiring treatment. Moreover, there are statements that it could be addressed in the CIP portion of Rice's incarceration.

¶43 The reliance upon the postconviction report is somewhat similar to the facts in *State v. Prince*, 147 Wis. 2d 134, 135, 432 N.W.2d 646 (Ct. App. 1988), where, despite the defendant's contention that a postsentencing finding that his sexually deviant behavior was, in fact, treatable, the sentencing court held it was not a new factor. At sentencing, the trial court was aware of Prince's sexually deviant behavior. *Id.* at 137. The *Prince* court held that "[c]hanges in attitude and prison rehabilitation are not new factors justifying sentence modification." *Id.* at 136. Moreover, the *Prince* court found that the trial court "did not overlook the treatability of [the defendant's] aberrant sexual behavior when sentencing him." *Id.* at 137.

¶44 In *Grindemann*, the court held that it was not a "new factor" when the defendant—after receiving therapy in prison—first "appreciated" the impact upon him due to the fact that he had been a victim of sexual exploitation while a child. *Grindemann*, 255 Wis. 2d 632, ¶23. The court found this to be "a classic example of the 'mere reflection' or 'second thoughts' which cannot form the basis for a sentence reduction." *Id.*, ¶24 (citation omitted).

¶45 Rice also appears to assert that the circuit court should have just accepted his representations to DOC regarding his history of substance abuse and given presumptive, or even dispositive, weight to those self-reported statements and grant his motion for resentencing or his motion for reconsideration. He has, however, provided no authority for such an assertion. The sentencing court heard statements from both counsel and Rice. When it made statements as to the lack of evidence of a substance abuse problem, either Rice or his counsel could have

spoken up and addressed that issue. They did not—even though Rice's counsel filed a notice of intent to pursue postconviction relief that very same day. The circuit court, in denying both the motion for resentencing and motion for reconsideration, clearly found that no new factor existed.

¶46 Given all of this, Rice's statements to DOC, that were recorded and analyzed in the inmate classification report with respect to his substance abuse needs, do not qualify as a new factor.

¶47 In addition, there is nothing in the record to suggest that Rice's eligibility for the SAP was "highly relevant" to the imposition of his sentence. *See Harbor*, 333 Wis. 2d 53, ¶40 (quoting *Rosado*, 70 Wis. 2d at 288). It would not have explained why Rice chose to violate the no-contact order and strike A.N. after jumping in her car. It would not have mitigated the seriousness of Rice's decision to continually commit domestic violence against A.N. And, despite Rice's reply argument, there is no basis to presume that the sentencing court—which was clearly concerned over this domestic abuse (especially in front of Rice and A.N.'s child)—would have decided that it would be appropriate to also find eligibility for the SAP just because that court found the CIP to be appropriate. There is nothing in the record to establish that the post-conviction report would have altered the imposition of the sentence and/or the eligibility for the SAP.

¶48 Recognizing all of this, in denying the motions for resentencing and for reconsideration, the circuit court did not apply incorrect standards of law and did not commit an erroneous exercise of discretion.

¶49 Even assuming, arguendo, that the postconviction inmate classification report was a new factor, this court "may still, however, consider whether the new factor frustrates the original sentencing scheme." *See Vaughn*,

344 Wis. 2d 764, ¶36. It did not. That court carefully and methodically outlined the sentencing objectives at issue and how the sentence imposed met all of them. It relied upon the statements made by the State, Rice's counsel, and Rice himself.

¶50 Accordingly, Rice has also failed in this part of his appeal.

## CONCLUSION

¶51 In summary, this court concludes that either by the Wisconsin Supreme Court's COVID-19 orders and Kenosha's Operational Plan, or through the February 21, 2021, colloquy, Rice's statutory right to an in-person appearance at his plea and sentencing on June 7, 2021, was not violated and that it was knowingly, voluntarily, and intelligently waived. Further, Rice has failed to establish that a new factor exists warranting sentence modification or that there was an erroneous exercise of discretion by the circuit court when it denied Rice's motions for resentencing and for reconsideration. This court, therefore, affirms the judgment imposed by the sentencing court, including the lack of eligibility for the SAP, and affirms the circuit court's orders denying Rice's motion for resentencing and corresponding motion for reconsideration.

*By the Court.*—Judgment and orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.