STATE of Wisconsin, Plaintiff-Respondent,

v.

Michael W. Voss, Jr., Defendant-Appellant.†

Court of Appeals

*Nos. 95–1183–CR, 95–1184–CR. Submitted on briefs September 3, 1996.—Decided October 23, 1996.*

(Also reported in 556 N.W.2d 433.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Reesa Evans* of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Paul Lundsten*, assistant attorney general.

Before Brown, Nettesheim and Snyder, JJ.

BROWN, J.   Michael W. Voss, Jr. entered pleas to charges of armed burglary, armed robbery and, in an unrelated case, threatening to communicate derogatory information. He was sentenced to twelve years in prison and moved to withdraw his pleas, which motion was denied. He claims that he should have been allowed to withdraw the threatening to communicate derogatory information plea because the statute requires specific intent to commit the crime and the trial court knew from the plea colloquy that Voss claimed to have no such intent. We hold that the statute requires general intent, not specific intent, and reject the claim. He also claims that the State violated the plea agreement and that counsel was ineffective. We reject those claims as well and affirm.

Regarding the threat charge, the facts are as follows. A neighboring doctor and his wife observed an envelope near their front door. Inside the envelope was a typewritten note directed to the doctor stating, "You really should give me $30,000 because if you do not I will give photographs to your wife and she will not love you much longer. Put the money next to the 'dead end sign' on corner of Guthrie and Crestview. Put the money in a garbage bag." Adjacent to the last sentence was a hand-written sentence stating, "May 17th at 10:31 p.m." After investigation by police, Voss was

confronted and advised of his *Miranda* rights. He waived his rights and confessed to being responsible for the note. Although he claimed that it was a "prank," he admitted that he would have looked for the garbage bag at the appointed time and place.

At the plea hearing, the following colloquy regarding the threat took place between Voss and the trial court:

THE COURT: How did you get the idea to do that?

MR. VOSS: It was a joke from one of my friends from where I used to live.

THE COURT: What do you mean one of your friends?

MR. VOSS: We did it once before as a joke.

THE COURT: To whom?

MR. VOSS: I don't know.

THE COURT: Another adult or another friend.

MR. VOSS: Another friend.

[THE COURT:] Did you know Mr. Kerns.

MR. VOSS: As neighbor, yes. They left [sic] me play in the lot next to their house.

THE COURT: I take it you didn't have any photographs.

MR. VOSS: No.

THE COURT: You made all that up?

MR. VOSS: Yes.

THE COURT: Did you expect to get 30 thousand dollars?

MR. VOSS: No.

THE COURT:   How well did you know Mr. Kerns?

MR. VOSS:   Just from meeting him when I went to play and stuff and talking to them.

THE COURT:   Mr. Voss how did you expect him to know this was a joke?

MR. VOSS:   I guess I didn't.

THE COURT:   Do you admit you committed that offense?

MR. VOSS:   Yes.

Based upon the information contained in the complaint and the plea colloquy, the trial court was satisfied that the factual predicate to the charge was present.

In Voss' postconviction motion, he argued that there was not sufficient factual support for the plea because he told the court at the plea hearing that the threatening letter was a joke, saying he "made it up" and did not expect to get any money. He asserted then and asserts now that he did not admit to any act which would have indicated his intention to obtain a transfer of property. He argues that his answers to the trial court actually said the opposite. Voss argues that "basic criminal intent requires that the actor has the purpose to do the thing or cause the result specified or the belief that his act will cause such result." Voss contends that he must have made the threat with intent to gain pecuniary advantage in order to be properly convicted of the crime and asserts that he "outright denied such intent."

We disagree with his view of the statute. The statutory definition of § 943.31, STATS., is as follows:

> Whoever threatens to communicate to anyone information, whether true or false, which would

injure the reputation of the threatened person or another unless the threatened person transfers property to a person known not to be entitled to it is guilty of a Class E felony.

What is important about the language of this statute is that nowhere does it say that the perpetrator must intend that the property be transferred. Specific intent is an element of the crime only if it is required by statute. *State v. Swanson,* 92 Wis. 2d 310, 320, 284 N.W.2d 655, 660 (1979). The term "intentionally," the phrases "with intent to" and "with intent that," and forms of the verb "know" or "believe" show that specific criminal intent is an element of the crime in chs. 939 to 951, STATS. *See* § 939.23(1), STATS. None of these terms is used in § 943.31, and therefore, specific intent to obtain the transfer of funds is not an element of the crime. *See State v. Danforth,* 125 Wis. 2d 293, 295, 371 N.W.2d 411, 413 (Ct. App. 1985), *aff'd,* 129 Wis. 2d 187, 385 N.W.2d 125 (1986).

■

This court agrees with the State, however, that § 943.31, STATS., is not a strict liability statute either. Rather, the statute includes the element that the accused made the threat while knowing he or she was not entitled to the property demanded. This is oftentimes referred to by scholars and courts alike as general intent, that is, voluntarily doing the prohibited act and having the capacity to understand that the act was wrong. *See State v. Collova,* 79 Wis. 2d 473, 479-80, 255 N.W.2d 581, 584-85 (1977); Cf. Frank J. Remington, *Liability Without Fault Criminal Statutes— Their Relation to Major Developments in Contemporary Economic and Social Policy: The Situation in Wisconsin,* 1956 WIS. L. REV. 625.

It is important to note that a different statute, § 943.30, STATS., concerning threats to injure or accuse of a crime, *does* contain language requiring proof of "intent" to "extort money" or otherwise gain an advantage. While Voss cites to cases discussing this statute, these cases are inapplicable to the statute before us. Moreover, the language of § 943.30 serves as a good contrast and helps illustrate why the statute in this case is not a specific intent statute.

A close look at the statute before us shows that it prohibits a certain type of threat regardless of whether the perpetrator has any expectations about the property that he or she demands be transferred. The elements, as set forth by WIS J I—CRIMINAL 1474, are: the defendant made a threat to communicate to anyone certain information about the threatened person; that the information, whether true or false, would injure the reputation of the threatened person; that in return for not communicating the information, the defendant requested a transfer of property; and that the defendant knew he or she was not entitled to the property.

Clearly, the facts in the complaint and the colloquy at the plea hearing satisfy these elements. Voss admitted making the threat, admitted that he demanded a transfer of money, and admitted that he knew he was not entitled to the money had he received it. We reject Voss' argument.

Voss next asserts that the State violated its plea bargain. The bargain called for the State being able to recommend a prison term of no more than eight years on the armed robbery, twenty years concurrent probation on the armed burglary and concurrent

probation on the "threats to communicate." At sentencing, the assistant district attorney informed the trial court that the victims of the armed burglary and armed robbery wanted to address the court. There was no objection from Voss' trial attorney and the victims addressed the court. Voss now claims that the State's "presenting these persons to the court . . . was a clear 'end run' around the plea agreement." Voss argues that the State "knew that these statements would present a very one-sided and extremely negative picture of the defendant in a manner that would invite the court to ignore the plea agreement and go beyond it."

There are at least three reasons why the argument lacks merit. First, the State had every right to put before the court any information supporting its argument for an eight-year prison sentence. A statement from the victims about how the crime affected their lives is relevant to one of the considerations that a judge must take into account at sentencing—the gravity of the crime. *See State v. Ferguson,* 166 Wis. 2d 317, 324-25, 479 N.W.2d 241, 244-45 (Ct. App. 1991). Second, even though the State has the right to present the victims, the record supports the State's assertion that, here, the prosecutor did not "present" the statements of the crime victims. He only informed the court that two of the victims wished to be heard. To that end, § 950.04(2m), STATS., allows victims "to have the court provided with information pertaining to the economic, physical and psychological effect of the crime upon the victim of a felony and have the information considered by the court." While Voss contends that this information was already provided by the presentence report, the statute in no way limits the manner in

which the court may be provided with the information. The law does not proscribe victims from allocuting at sentencing. Third, even if there was no statute, art. I, § 9m of the Wisconsin Constitution must be read to allow victims the right to speak at sentencing. That section explicitly grants the "opportunity to make a statement to the court at disposition." So, even apart from what the prosecutor does or does not present at sentencing, victims have independent constitutional access to the court at the dispositional stage. Voss' argument fails.

■

Next, Voss claims several instances of ineffective assistance of trial counsel. He argues that counsel was ineffective for failing to object to the lack of factual basis for the threat charge, but we have already answered that question. He claims that counsel was wrong in failing to object to the State's violation of the plea agreement, but we have already ruled that Voss' argument on that score is wrong. He contends that counsel failed to review the evidence prior to the plea. But, as the State rhetorically asks: what was in the reports that would have changed the outcome? We see no prejudice even if we assume that counsel was ineffective. The law mandates that Voss show prejudice and he has failed to do so. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Pitsch*, 124 Wis. 2d 628, 633, 369 N.W.2d 711, 714 (1985). Voss complains that trial counsel failed to investigate certain witnesses. But what witnesses would have helped the case? None are mentioned. There is no offer of proof about what the "witnesses" would have been able to do which would be relevant to Voss' guilt or innocence. The witnesses who *were* named would have testified about his character for sentencing purposes.

All of these ineffective assistance of counsel claims lack merit.

Voss raises more ineffective assistance arguments, these dealing with the sentencing phase. First, he contends that counsel did not present character witnesses who could counter the "character assassination involved in the statements" made by the victims. Second, Voss claims that counsel had a duty to investigate and bring forward "ALL positive information regarding the defendant." He contends that the witnesses and the positive information would have "laid out [a] pattern of expressions of remorse over a period of time . . . including that he was more concerned about the effect of his actions on the victim and her children than what would happen to himself." Third, Voss claims that his counsel failed to assure that the information provided to the court was accurate. Fourth, Voss contends that his trial counsel failed to object to the trial court's decision to exclude certain evidence submitted at the sentencing hearing because it contained hearsay.

We could address each of these complaints seriatim as well as all the subarguments raised under them and explain how none of these complaints are tenable. But we do not find it necessary. The postconviction testimony consisted of 272 pages. The same issues raised here were presented to the trial court, as indeed they should have been. At the end of the lengthy testimony, the trial court stated that at sentencing, it had considered the "premeditation, the extensive premeditation and rumination by you, the revenge motive if you will, the viciousness of this attack that obviously scared you, scared [the victim] and scared this community." We note here that the armed robbery and armed burglary charges were

originally complemented by aggravated battery with a weapon, false imprisonment charges.

The trial court noted that the record developed at the postconviction hearing actually bolstered the trial court's original perception that Voss was a "time bomb ready to explode" when he "exploded" into the victim's residence. The trial court further commented that the tenor of most of Voss' complaints, such as taking issue with the way the victim described the assault, claiming that but for better discovery, he would have decided to take the case to trial, and, in essence, blaming others for what has occurred, further showed the lack of remorse that was considered by the trial court at sentencing. Obviously, what the trial court was saying is that none of the things Voss complains about would have affected the sentence and, indeed, may have made the sentence more severe. From our review of the record, our confidence in the outcome of the sentence is not undermined and, therefore, the prejudice prong noted in *Strickland* has not been satisfied by Voss. The sentence passes muster.

*By the Court.*—Judgments and order affirmed.