COURT OF APPEALS
DECISION
DATED AND FILED

January 10, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP789-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2018CF13

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

MARCUS J. HARRIS, JR.,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: T. CHRISTOPHER DEE, Judge. *Affirmed*.

Before Brash, C.J., Donald, P.J., and White, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  Marcus J. Harris, Jr., appeals from a judgment convicting him of armed robbery, first-degree reckless injury with the use of a dangerous weapon, and possession of a firearm as a felon, all as a repeater, and from an order denying postconviction relief.  Harris contends that the trial court erroneously exercised its discretion when it prohibited him from introducing evidence that a victim had misidentified him in a different incident.  In addition, Harris contends that trial counsel was ineffective for failing to investigate or raise mitigating circumstances during sentencing, and the trial court erroneously exercised its discretion in denying postconviction relief on this ground.  For the reasons discussed below, we reject Harris's arguments and affirm.

## BACKGROUND

¶2    On the evening of June 22, 2017, Terri and Rudy went out for some food.[1]  Rudy placed a food order, and then returned to Terri's car with the food.  As they ate, Terri sat in the driver's seat and Rudy stood outside the car.  A man approached Rudy and asked for a light.  Rudy held out a lighter and the man "smacked it" out of Rudy's hand.  The man pulled out a gun and took numerous items from Rudy, including his phone, wallet, social security card, and cash.

¶3    The man then approached Terri's driver's side window and tapped on it with the gun.  In response, Terri, who had a concealed carry license, fired several times toward the man and drove away.  Terri was shot twice in her shoulder.

---

[1] For the purposes of confidentiality, we use pseudonyms instead of the victims' names.

2

¶4 After the shooting, Rudy identified Harris in a photo lineup.[2] Terri viewed a police photo lineup, but did not pick anyone out. Cell mapping data showed that Harris's cell phone may have received two calls near the crime scene.

¶5 Relevant to this appeal, Harris was charged with three counts: armed robbery, first-degree reckless injury with the use of a dangerous weapon, and possession of a firearm by a felon, all as a repeater.[3]

¶6 A jury trial took place. During the trial, the defense sought to introduce testimony from a detective that Ethan, a victim from a different robbery incident, had looked at a photo lineup and identified Harris as the suspect; however, Harris was actually in jail on the day of the alleged robbery involving Ethan. The State objected based on relevance. The trial court responded that it would reserve judgment based on relevance.

¶7 Defense counsel explained that he intended to use the testimony to attack the fairness and reliability of photo lineups. The trial court stated that Ethan would need to testify to establish a proper foundation.

¶8 Defense counsel then indicated that he did not see a hearsay problem with a detective testifying that he provided Ethan with a photo lineup and Ethan identified Harris as being involved in the robbery at issue by placing a circle on the form. The trial court responded that, "[r]emember the hearsay rule is any

---

[2] Harris was selected as one of the targets in the photo lineup because .380 casings were found at the crime scene, which was the type of casing recovered from another crime scene where Harris was a suspect.

[3] The criminal complaint also included additional charges against Harris which were eventually dismissed without prejudice or severed from the counts at issue in this appeal.

verbal statement or any action intended to be a statement. And circling a photo certainly would qualify on that second prong. So, it's still hearsay."

¶9 The defense ultimately did not call Ethan to testify. In closing arguments, the defense attacked the identification of Harris as the robber and argued that the State had failed to prove that Harris was in the area of the shooting. The jury found Harris guilty of all three charges.

¶10 At sentencing, the State recommended a total sentence of twenty years of initial confinement and ten years of extended supervision. The defense argued for seven years of initial confinement and eight years of extended supervision. Harris's attorney discussed the evidence presented at trial, pointed out that Harris's past record was not violent, and noted that Harris was not the one who started shooting, but shot in return. Harris's attorney also informed the trial court that Harris's extended supervision was revoked and Harris was presently serving revocation time and had other charges pending. Harris spoke and maintained that he did not commit the offenses.

¶11 The trial court imposed a total sentence of eighteen years of initial confinement and eleven years of extended supervision. The court began its comments by stating that the public needed protection from armed robberies and "anything of that nature" because "people are entitled to go about their business and not have to worry about … whatever they have on them [being] taken without permission or payment[.]" The court stated that the fact that someone was shot added an aggravating factor. The court took note of Harris's prior record, which started with some "pettier stuff," and then "graduated to armed robberies." The court indicated that Harris was previously given probation, but probation did not seem to deter him.

¶12   Harris filed a postconviction motion arguing that his trial attorney was ineffective for failing to present mitigating facts about Harris and that the trial court sentenced Harris without having "complete information" about his background.

¶13   An investigative background study of Harris was attached to the postconviction motion.   The information in the investigation included that: (1) Harris had never met his father and his mother was in and out of the hospital and died when he was thirteen; (2) after Harris's mother died, Harris and his siblings moved around among their relatives; (3) Harris's aunt said he was in special education and needed additional help; (4) Harris began drinking alcohol and smoking marijuana in seventh grade and continues to struggle with addiction; (5) Harris dropped out of school in the ninth grade; (6) a mentor tried to help Harris, including providing food and clothing for Harris; (7) Harris's mentor helped him find jobs in the past, and said that Harris would have jobs waiting for him after his release; and (8) Harris's sisters said that he was always willing to help them and others.

¶14   The same judge who presided over the sentencing hearing denied the postconviction motion without an evidentiary hearing.   The court stated that, "[w]hile these circumstances are unfortunate, none is truly mitigating, and therefore, even if counsel had presented this information at the defendant's sentencing hearing, the sentence would have been exactly the same."   The court indicated that it did not doubt that Harris had a difficult upbringing, but that the "innocent victims [were] not responsible for that."

¶15   The trial court went on to state that Harris's record "demonstrated a pattern of escalating criminality and an unwillingness to be deterred" by his prior

correctional experience. The court noted that "[t]his time, someone got shot" and "next time, someone might get killed." The court indicated that its "primary sentencing responsibility is to the community, and in this instance … the sentence imposed represents the minimum amount of confinement time necessary to accomplish the goals of punishment, deterrence and community protection." Thus, the court stated it was not persuaded that the proffered mitigating information warranted sentence modification or a new sentencing hearing. The court stated that it "had all the information it needed to make an informed decision about an appropriate sentence in this case."

¶16    Harris now appeals. Additional relevant facts are referenced below.

## DISCUSSION

¶17    On appeal, Harris contends that: (1) the trial court erroneously exercised its discretion when it prohibited him from introducing evidence that Ethan, a victim in a different incident, had misidentified him; and (2) trial counsel was ineffective for failing to investigate or raise mitigating circumstances during sentencing, and the trial court erroneously exercised its discretion in denying postconviction relief on this ground. We address each issue in turn.

### I.    Photo Lineup Evidence

¶18    Harris first argues that the trial court erred by excluding the photo lineup evidence involving Ethan on hearsay grounds. In his initial brief, Harris contends that the evidence was admissible under WIS. STAT. § 908.01(4)(a)3.

(2019-20).[4]   Section 908.01(4)(a)3. provides that a statement is not hearsay if: "[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is … [o]ne of identification of a person made soon after perceiving the person[.]"

¶19   The State responds that the trial court properly exercised its discretion in excluding the evidence.   The State observes that WIS. STAT. § 908.01(4)(a)3. requires that the "declarant," which in this case is Ethan, "testifies at the trial or hearing and is subject to cross-examination."   Here, however, Harris did not call Ethan to testify.

¶20   In reply, Harris concedes that the language of WIS. STAT. § 908.01(4)(a)3. supports the State's argument that Ethan needed to testify.   Based on the plain language of the statute, we accept Harris's concession.   Thus, we conclude that the trial court did not erroneously exercise its discretion when it ruled that the evidence was inadmissible in the absence of Ethan's testimony.[5]

¶21   In addition, we note that Harris contends that the evidence was admissible because it was "relevant" to testing the police procedures used to identify a suspect.   We disagree.

---

[4] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[5] In his reply brief, Harris suggests for the first time that language in *State v. Williamson*, 84 Wis. 2d 370, 267 N.W.2d 337 (1978), *abrogated on other grounds by Manson v. State*, 101 Wis. 2d 413, 422, 304 N.W.2d 729 (1981), may not be consistent with WIS. STAT. § 908.01(4)(a)3.'s requirement that a declarant testify.   We do not consider arguments raised for the first time in a reply brief as it is inherently unfair to the opposing party. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998).

¶22 Relevant evidence "means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." WIS. STAT. § 904.01. Here, the evidence that a different victim had misidentified Harris for a different crime did not have any impact on whether Rudy correctly identified Harris as the person who committed the armed robbery on June 22, 2017. Thus, we conclude that the evidence was not relevant, and properly excluded.[6]

## II.    Ineffective Assistance of Counsel

¶23 Harris next contends that his trial attorney was ineffective for failing to investigate or raise mitigating circumstances during sentencing, and that the trial court erroneously exercised its decision in denying postconviction relief.

¶24 To establish ineffective assistance of counsel, a defendant must prove both that counsel's performance was deficient and that the defendant was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). If the defendant fails to adequately prove one prong of this test, we need not address the second. *Id.* at 697.

¶25 When deciding whether a defendant is entitled to an evidentiary hearing based on an ineffective assistance of counsel claim, we first independently determine "whether the motion on its face alleges sufficient material facts that, if

---

[6] We note that the State makes additional arguments as to why the trial court's ruling should be affirmed, including that Harris failed to preserve his argument under WIS. STAT. § 908.01(4)(a)3. for appeal, and that any alleged error was harmless. Because we reject Harris's arguments on the merits, we do not address these additional arguments. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) ("[C]ases should be decided on the narrowest possible ground[.]").

true, would entitle the defendant to relief." *State v. Ruffin*, 2022 WI 34, ¶27, 401 Wis. 2d 619, 974 N.W.2d 432. "Whether the record conclusively demonstrates that the defendant is entitled to no relief is also a question of law we review independently." *State v. Spencer*, 2022 WI 56, ¶23, 403 Wis. 2d 86, 976 N.W.2d 383 (citations omitted). "If the record conclusively demonstrates the defendant is not entitled to relief, the [trial] court has the discretion to decide whether to hold a hearing, which we review for an erroneous exercise of discretion." *Id.*

¶26 In this case, even if we conclude that trial counsel performed deficiently, Harris has failed to establish that he was prejudiced. To prove prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

¶27 In its decision denying the postconviction motion, the trial court stated that even if the mitigating information had been presented, "the sentence would have been exactly the same." The trial court stated that "[t]he court's primary sentencing responsibility is to the community, and in this instance … the sentence imposed represents the minimum amount of confinement time necessary to accomplish the goals of punishment, deterrence and community protection."

¶28 Thus, given the trial court's finding that it would have imposed the same sentence and our own review of the sentencing transcript, we conclude that Harris has failed to establish prejudice. *See State v. Voss*, 205 Wis. 2d 586, 598, 556 N.W.2d 433 (Ct. App. 1996) (holding that a defendant did not establish prejudice where at the postconviction hearing, the trial court indicated that "none of the things [the defendant] complains about would have affected the sentence

and, indeed, may have made the sentence more severe"); *State v. Giebel*, 198 Wis. 2d 207, 219, 541 N.W.2d 815 (Ct. App. 1995) (holding that a defendant did not establish prejudice where the trial court found it would have imposed the same sentence even if trial counsel had performed at sentencing in the manner suggested by the defendant). Accordingly, the trial court properly denied Harris's postconviction motion without an evidentiary hearing. *See Spencer*, 403 Wis. 2d 86, ¶23.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.