**COURT OF APPEALS
DECISION
DATED AND FILED**

**March 20, 2024**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.**  **2023AP824-CR
2023AP825-CR**

Cir. Ct. Nos.  **2021CF41
2021CF111**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

JOSEPH J. GOFF,

    DEFENDANT-APPELLANT.

---

APPEAL from judgments and an order of the circuit court for Waukesha County:  DENNIS P. MORONEY and JENNIFER R. DOROW, Judges. *Affirmed*.

Before Gundrum, P.J., Neubauer and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  In these consolidated cases, Joseph J. Goff appeals from judgments of conviction and an order denying his motion for postconviction relief.  He claims the sentencing court erroneously exercised its discretion in sentencing him because it "failed to consider the 'gravity of the offense.'"  For the following reasons, we affirm.

## *Background*

¶2    The State charged Goff with thirty-seven criminal counts, spread over two different cases.  At a plea and sentencing hearing held on December 20, 2021, Goff pled to nine counts—six for misappropriation of identifying information, one for attempted burglary, one for burglary, and one for bail jumping.  The other twenty-eight counts were dismissed and read in, as was another count for misappropriation of identifying information related to a third case.

¶3    At the plea portion of the hearing, the circuit court[1] went through each of the nine counts to which Goff was pleading and on which he was being sentenced that day, identifying each count by name and explaining the maximum sentence attached to each count.  The court noted that the burglary and attempted burglary counts were of a "dwelling," one in the Village of Hartland and one in the City of New Berlin, and that each of the misappropriation counts were "for financial gain" and stemmed from Goff utilizing "a Landmark Credit Union credit card and debit cards" of a resident from New Berlin, an "ExxonMobil credit card"

---

[1] The Honorable Dennis P. Moroney presided over the plea and sentencing hearing.  The Honorable Jennifer P. Dorow entered the judgments of conviction and the order denying postconviction relief.

of another resident from that city, a "Visa platinum credit card" of a resident from the Village of Pewaukee, a "Master Card" of a Village of North Prairie resident, a credit card of a resident of the Village of Hartland, and the debit card of another victim. Related to the bail jumping charge, the court noted that on January 6, 2021, in the Village of Hartland, Goff failed to comply with the terms of his bond. The court further specified that each of the misappropriation counts related to Goff misappropriating the identifying information "for the purpose of obtaining money." The court accepted Goff's pleas, informed Goff of their impact on his right to vote and carry a firearm, and then pivoted right into sentencing.

¶4 The State prosecutor explained to the circuit court that Goff's "property crime rampage" took place from October 2020 through January 2021, "spanned 6 different municipalities," and had twelve separate victims, resulting in thirty-eight counts. "Most involved auto entries," the prosecutor explained, "but some then progressed to identity thefts when [Goff] would use transaction cards from the vehicles that he stole from and then make purchases." The prosecutor also explained that the burglary charge was for "unlawful home entry" and discussed Goff's prior convictions for burglary, drug charges, forgery and theft, with other charges being dismissed and read in.

¶5 Counsel for Goff acknowledged that Goff had "the same or similar crimes pending" in another county, but emphasized that Goff is "essentially a recovering [heroin] addict." Goff's mother spoke to say that Goff "is really a good man … that did bad things … because of his addiction." Counsel then noted that "these are property crimes—[n]obody got raped or murdered or anything like that. Certainly, there's a fear in people … that they [will] have for the rest of their

lives."  Goff spoke next and, among other things, apologized for his criminal conduct.

¶6      In pronouncing sentence, the circuit court noted that "[a]ddictive situations have destroyed more than you and other people in this community." The court referred to "all these people that you hurt, including yourself, including your family that had faith in you, to let them down.  And all because the simple word relapse."  "[I]t's all a bunch of selfish behavior," the court stated.  "You put yourself and drugs ahead of everything else….  Once you ingest and you lose control of yourself and who you are, you buy on to what happens."  The court spoke of Goff "tak[ing] advantage of people by taking their stuff" and stated that it could tell from listening to Goff's mother that "[s]he told you from a little boy on, you do two things in this world:  You don't take things from other people, and you don't hurt other people."  "[Y]ou certainly would not let this happen or want to have this happen to your mother," the court stated.  "And there are things you did here that involved someone else's mother, father, etcetera.  And they cared.  You didn't care.  Just another victim as far as you're concerned, just to perpetuate … what you wanted for your own self-benefit and your self-aggrandizement."

¶7      The circuit court expressed that "that type of behavior" should not be excused on the basis of a defendant saying "he didn't mean it."  The court

> ha[s] a duty to you, to this community, to hold people accountable and to have victims feel like they can be possibly made whole again which is always unlikely. They'll always have the scars of this type of uncertainty and mistrust, if you will, of people.  That's a terrible feeling to have.  And, you know, all I can tell you is that yes, you've perpetuated that.
>
> So I do look at that seriously.

4

The court spoke of "the seriousness of all of these offenses, the cumulative aspect of it. The amount of wrong that you've done to so many people." The court also spoke of the need for it to "protect society from this type of behavior" and to consider "the effect of this on the people … that you harmed and everybody else that ha[s] to deal with this type of behavior, during the course of their life." Punishing Goff was necessary, according to the court, "so that you're finally deterred and won't even think twice about doing this kind of thing again upon your release."

¶8     The circuit court sentenced Goff to consecutive sentences of one year initial confinement and one year extended supervision on each count, for a total of nine years initial confinement and nine years extended supervision.

¶9     Goff moved for postconviction relief, asserting the circuit court erroneously exercised its discretion in sentencing him by not considering the gravity of the offenses of which he was convicted. The court denied the motion, concluding it had adequately considered the gravity of the offenses. Goff appeals.

***Discussion***

¶10    In sentencing a defendant, a circuit court "must consider three primary factors: (1) the protection of the public; (2) the gravity of the offense; and (3) the rehabilitative needs of the defendant." ***State v. Bolstad***, 2021 WI App 81, ¶14, 399 Wis. 2d 815, 967 N.W.2d 164. "Proper sentencing discretion can exist without [explicitly identifying the] sentencing factors; what is required is a *consideration* of the sentencing factors." ***Id.***, ¶16 (alteration in original; quoting ***State v. Wegner***, 2000 WI App 231, ¶7, 239 Wis. 2d 96, 619 N.W.2d 289). On appeal, we are required to "closely scrutinize the record to ensure that 'discretion

5

was in fact exercised and the basis of that exercise of discretion [is] set forth." *State v. Gallion*, 2004 WI 42, ¶4, 270 Wis. 2d 535, 678 N.W.2d 197 (alteration in original). While "the absence of evidence in the record that the court considered the gravity factor would amount to an erroneous exercise of discretion," *Bolstad*, 399 Wis. 2d 815, ¶23, we will "sustain [the] sentence" if the record demonstrates that the required factors—here, specifically the gravity of the offense—were considered, *id.*, ¶24. On appeal, we determine "only whether 'there is evidence that discretion was properly exercised, and the sentence imposed was the product of that discretion.'" *Id.*, ¶19 (quoting *McCleary v. State*, 49 Wis. 2d 263, 281, 182 N.W.2d 512 (1971)). If the record shows that the circuit court did exercise its discretion, we "follow[] a consistent and strong policy against interference with the discretion of the [circuit] court in passing sentence." *Gallion*, 270 Wis. 2d 535, ¶18 (citation omitted).

¶11 Goff relies heavily upon our decision in *Bolstad* for his contention that the circuit court here failed to consider the gravity of his offenses when sentencing him. The case now before us, however, bears little similarity to *Bolstad*.

¶12 In *Bolstad*, the circuit court's remarks at sentencing "lack[ed] *any reference whatsoever* to the gravity of the underlying offense for which Bolstad was being sentenced." 399 Wis. 2d 815, ¶25 (emphasis added). Indeed, while the circuit court referenced its sentencing hearing with Bolstad two years earlier, in which it placed him on probation, *id.*, ¶¶4, 25, at the sentencing-after-revocation hearing underlying the appeal, the court "did not identify th[e] crime, mention any facts relating to that crime, or refer in any way to the court's consideration of the gravity of his criminal conduct," *id.*, ¶25. We stated that we could "see *nothing* in

the record from which we c[ould] discern that the circuit court considered the gravity of the underlying offense," *id.*, ¶26 (emphasis added), and we reemphasized that there was an "absence of … *any indication* in the record that the circuit court considered the gravity of the underlying offense." *Id.*, ¶27 (emphasis added). It was for this reason that we stated we "lack[ed] a sufficient basis to conclude that the court applied the correct legal standard" and determined the court "erroneously exercised its discretion when sentencing Bolstad after revocation." *Id.* "[T]he question," as we stated it, "is whether there is *something* in the record that shows that the court here considered the gravity of the offense…. It is precisely the absence in the record of *any reference* related to the gravity or the facts of the underlying criminal conduct that shows that the circuit court failed to consider the gravity of Bolstad's underlying offense as it was required to do, and erroneously exercised its discretion as a result." *Id.*, ¶37 (emphases added).

¶13    Goff's sentencing differs notably from Bolstad's. In ***Bolstad***, the circuit court failed to even mention the single crime under consideration and made, as we noted, no comments whatsoever related to the seriousness of the crime. *Id.*, ¶25. By contrast, here the court identified by name each of the individual nine counts to which Goff was pleading, along with the maximum sentence associated with each. The court noted the various communities around Waukesha County in which the crimes took place, the burglary-related offenses were to dwellings (as opposed to, for example, business property), the misappropriation counts related to numerous victims, and the misappropriating of victims' credit and debit cards was for the purpose of stealing money for himself. The prosecutor detailed Goff's "property crime rampage" and counsel for Goff emphasized that "[n]obody got raped or murdered or anything like that," but acknowledged that the victims would have to live with fear "for the rest of their

lives." Following those comments from the State and defense, the court addressed Goff regarding "all these people that you hurt," "tak[ing] advantage of" them with his "selfish behavior," and that he "let … down" his family. The court expressed that Goff "would not … want to have this happen to [his own] mother," yet his criminal actions harmed "someone else's mother, father, etcetera. And they cared. You didn't care." It was just for Goff's "self-benefit." The court stated it was unlikely Goff's victims would be "made whole again," because "[t]hey'll always have the scars of this type of uncertainty and mistrust … of people," and it emphasized to Goff that "yes, you've perpetuated that." The court added, "[s]o I do look at that seriously." The court spoke of "the seriousness of all of these offenses, the cumulative aspect of it. The amount of wrong that you've done to so many people." Furthermore, having just ordered the other twenty-eight counts dismissed and read in moments earlier, the court was well aware that more damage was done to other victims and communities than just those recognized by the nine counts to which the defendant pled.[2]

¶14 Based upon the totality of the plea and sentencing hearing, we are satisfied that the record here demonstrates that in sentencing Goff, the circuit court considered the gravity of Goff's "property crime rampage" and properly exercised its sentencing discretion.

---

[2] The circuit court asked Goff and his counsel if it could "use the facts as set forth in the respective criminal complaints" as support for Goff's pleas, and each answered in the affirmative. The court then found there was a factual basis for each of his pleas. Although the court articulated sufficient consideration of the gravity of the offenses during its comments at sentencing, the complaints provide even more support and specifics related to the gravity of the offenses. *See State v. Bolstad*, 2021 WI App 81, ¶38, 399 Wis. 2d 815, 967 N.W.2d 164 (suggesting a circuit court's reference to the criminal complaint may provide support for establishing the court's consideration of the gravity of the offenses at sentencing).

*By the Court.*—Judgments and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2021-22).